# EXHIBIT A

# **COMPLEX LITIGATION**

Tangipahoa Parish Clerk of Court 20260004268
Filed Nov 12, 2026 10:43 AM
Marquita Dyson CLS
Deputy Clerk of Court
E-File Received Nov 12, 2026 9:43 AM

**21ST JUDICIAL DISTRICT COURT, PARISH OF TANGIPAHOA**

**STATE OF LOUISIANA**

**NO. ____________ DIVISION _______ SECTION ____**

**STATE OF LOUISIANA,**
**by and through its ATTORNEY GENERAL, LIZ MURRILL**

**VERSUS**

**KALSHI INC.; KALSHI KLEAR INC.; KALSHI KLEAR LLC; KALSHIEX LLC; KALSHI TRADING LLC; QCX LLC d/b/a POLYMARKET US; BLOCKRATIZE INC.; QC TECH LLC; QC CLEARING LLC; PM DERIVATIVES LLC; ROBINHOOD MARKETS, INC.; ROBINHOOD DERIVATIVES, LLC; FORECASTEX LLC; ROTHERA EXCHANGE AND CLEARING LLC; FORIS HOLDINGS US, INC.; FORIS DAX, INC. d/b/a CRYPTO.COM; NORTH AMERICAN DERIVATIVES EXCHANGE, INC. d/b/a CRYPTO.COM | DERIVATIVES NORTH AMERICA; OG.COM; FORIS DAX FCM, LLC d/b/a OG BROKER; COINBASE GLOBAL, INC.; COINBASE FINANCIAL MARKETS, INC.; LUDLOW EXCHANGE, LLC d/b/a NOVIG; UNDERDOG SPORTS HOLDINGS, INC.; UNDERDOG EXCHANGE DCM, INC.; UDM, LLC d/b/a UNDERDOG PREDICT; IG GROUP HOLDINGS PLC; GEMINI SPACE STATION, INC.; GEMINI TITAN, LLC; GEMINI OLYMPUS, LLC; GEMINI TRUST COMPANY, LLC; and PROPHETX OPCO LLC d/b/a PROPHETX**

## PETITION FOR TEMPORARY RESTRAINING ORDER, PRELIMINARY INJUNCTION, CIVIL PENALTIES, AND OTHER RELIEF

NOW INTO COURT, through undersigned counsel, comes Plaintiff, the State of Louisiana, by and through Attorney General Liz Murrill, who respectfully submits the following Petition and request for an immediate Temporary Restraining Order and Preliminary Injunction.

## I. NATURE OF THE ACTION

1. In today's digital betting market, virtually anything can become a wager.
2. On KalshiEX LLC's online betting platform, for example, a user can bet on "Who will control the Senate?", "Who will be Trump's next Press Secretary?", what movie will win the Oscar for "Best Picture," what the "Feds fund rate" will be at the end of 2027, "What will Trump say this week?", who will be the "College Football SEC Championship Winner," or even something as mundane as "Where will it rain today?"
3. Similarly, on Polymarket US's online betting platform—which promises users they can wager "on everything"—bets range from the "balance of power" in Congress after the 2026 midterms, to the "2028 US presidential election winner," to "Where will 2026 rank among the hottest years on record?", to "Which companies will have" the "#1 AI model in 2026?"



Certified True and Correct Copy
CertID: 2026111300001
Tangipahoa Parish
Deputy Clerk Of Court
Generated Date:
11/13/2026 8:42 AM
Alteration and subsequent re-filing of this certified copy may violate La. R.S. 14:132, 133, and/or RPC Rule 3.3(a)(3).

****COMPLEX LITIGATION****

4. Among Kalshi and Polymarket's betting options is the wide universe of sports. In fact, in a single 30-day period spanning September to October 2026, Polymarket saw $13.7 billion in activity on its platform, with sports representing 98.2% of that activity.
5. Kalshi and Polymarket are not alone. A growing field of online platforms has adopted the same playbook to offer unlicensed sports wagering to Louisianans. Robinhood, Crypto.com, OG.com, Coinbase, Novig, Underdog, Gemini, and ProphetX—whether operating their own federally designated contract markets ("DCM") or routing Louisiana bettors' orders through another operator's exchange—accept or facilitate sports wagers from Louisiana residents, without a Louisiana license or permit and without paying Louisiana gaming taxes. Nonetheless, these platforms facilitate a massive volume of sports betting every day, including in Louisiana.
6. Ordinarily, to operate as a "sports wagering platform provider" in Louisiana, the "suitable person who desires" to act as a provider must "possess[] a valid permit" issued by the Louisiana Gaming Control Board ("the Board"). La. R.S. 27:605(A)(1). Neither Kalshi nor Polymarket nor any other Defendant has such a permit.
7. How do these "prediction markets" get over that clear legal impediment to operating their online betting platforms in Louisiana? Simple: They reframe their activities as offering "event contracts," and assert that they do not facilitate any gambling that falls within the State's purview.
8. The platforms' clever word play doesn't change the fact that gambling is illegal in Louisiana unless the Legislature specifically authorizes it and each parish votes in favor. La. Const. art. XII, § 6(C). Here, the Legislature has authorized sports wagering under a limited set of circumstances, within which Defendants clearly do not fall.
9. Defendants know they are not abiding by state law. In two lawsuits filed in the Western and Eastern District Courts of Louisiana, for example, Kalshi and Polymarket have filed procedurally and substantively flawed actions asking the federal courts to declare Louisiana's laws unconstitutional—because otherwise, the two companies are clearly in violation of the State's restrictions on online gambling and sports wagering specifically.



Certified True and Correct Copy
CertID: 2026111300001

Tangipahoa Parish
Deputy Clerk Of Court

Generated Date:
11/13/2026 8:42 AM

Alteration and subsequent re-filing of this certified copy may violate La. R.S. 14:132, 133, and/or RPC Rule 3.3(a)(3).

*See KalshiEX, LLC v. Murrill, et al.*, No. 1:26-cv-4476 (WDLA); *QCX LLC v. Murrill, et al.*, No. 2:26-cv-2482 (EDLA).

10. Louisiana is just one of many States facing the same problem. Gaming regulators and attorneys general across the country have determined that these platforms' "event contracts" are nothing more than unlicensed sports wagering. Nevada, Ohio, Maryland, New Jersey, Illinois, Montana, Arizona, Connecticut, Massachusetts, Michigan, New York, Missouri, Kentucky, Washington, Rhode Island, New Mexico, Wisconsin, Utah, and Arkansas have issued cease-and-desist orders, or filed civil or criminal enforcement actions against one or more of these Defendants, and several have already secured relief. For example, Arizona and Utah brought criminal charges; tribal governments in California, New Mexico, and Wisconsin sued under the Indian Gaming Regulatory Act; and Massachusetts, Nevada, Michigan, and Washington obtained geofencing orders forcing platforms to block their residents (Michigan's preliminary injunction against Kalshi carries a penalty of $500,000 per day).

11. Courts across the country, including the United States Courts of Appeals for the Ninth and Sixth Circuits and federal and state courts in Nevada, Michigan, Ohio, Iowa, Connecticut, New York, Maryland, and Utah, have largely agreed that these sports "event contracts" are sports wagers subject to state regulation and are not (as Defendants are currently arguing nationwide) "swaps" within the exclusive jurisdiction of the U.S. Commodity Futures Trading Commission ("CFTC").

12. The Attorney General of Louisiana has repeatedly joined multistate coalitions of attorneys general advancing that very position, including as an amicus curiae in *KalshiEX, LLC v. Hendrick*, No. 25-7516 (9th Cir.), in the appeal decided in *KalshiEX, LLC v. Assad*, 190 F.4th 1098 (9th Cir. 2026); *KalshiEX LLC v. Martin*, No. 25-1892 (4th Cir.); *Blue Lake Rancheria v. Kalshi Inc.*, No. 25-7504 (9th Cir.); and *Commonwealth of Massachusetts v. KalshiEX LLC*, No. SJC-13906 (Mass.). That consensus is strikingly bipartisan: Across these briefs, 40 States and the District of Columbia—spanning the political spectrum, from Alabama, Alaska, Arkansas, Idaho, Indiana, Kansas, Nebraska, Oklahoma, South Carolina, South Dakota, Tennessee, Utah, and Wyoming to California, Connecticut, Illinois,



Certified True and Correct Copy
CertID: 2026111300001

Tangipahoa Parish
Deputy Clerk Of Court

Generated Date:
11/13/2026 8:42 AM

Alteration and subsequent re-filing of this certified copy may violate La. R.S. 14:132, 133, and/or RPC Rule 3.3(a)(3).

Maryland, Massachusetts, Michigan, Nevada, New Jersey, New York, Oregon, Washington, and Wisconsin, along with Louisiana—signed on. These States have uniformly rejected Defendants' attempts to strip Louisianans and other Americans of the very consumer protections that state gaming regimes supply but the CFTC's derivatives regime does not, including licensing and suitability vetting, a minimum gambling age of 21, self-exclusion and responsible-gaming tools, funding-method and anti-money-laundering controls, and sports-integrity safeguards, leaving the public exposed to problem gambling, underage betting, and threats to the integrity of sporting events.

13. Despite their attempts to muddy the waters, what is and is not gambling in Louisiana is not hard to define. Here, Defendants plainly engage in sports wagering or sports betting under state law—conduct that is blatantly illegal because Defendants have not complied with Louisiana's permitting, licensing, and other similar restrictions.

14. For well over a year now, Defendants have illegally operated online sports wagering platforms in Louisiana without a permit and without paying taxes on any earnings. The Attorney General brings this suit—and seeks immediate relief—to put an end to this clear violation of Louisiana law.

## II. PARTIES

15. This action is brought for and on behalf of the sovereign State of Louisiana, by and through its duly elected Attorney General, Liz Murrill. The Attorney General, as chief legal officer of the State, is statutorily authorized to initiate and prosecute any and all suits deemed necessary for the protection of the interests and rights of the State pursuant to La. R.S. 13:5036, 49:257, and related statutes and Louisiana law. The Attorney General is further authorized to initiate and prosecute suits to penalize conduct that constitutes unfair or deceptive trade practices under 51:1404, 51:1407, and related statutes. Specifically, La. R.S. 27:19.1(G) authorizes the Attorney General to "bring an action in the name of the state to restrain by temporary or permanent injunction the conduct giving rise to" a "violation" of La. R.S. 14:90.3 and related gambling laws.

16. Defendants in this action are entities that offer, assist in offering, or facilitate the offering of illegal gambling operations in the State of Louisiana:



Certified True and Correct Copy
CertID: 2026111300001

Tangipahoa Parish
Deputy Clerk Of Court

Generated Date:
11/13/2026 8:42 AM

Alteration and subsequent re-filing of this certified copy may violate La. R.S. 14:132, 133, and/or RPC Rule 3.3(a)(3).

**a. Kalshi Defendants**

17. Defendant Kalshi, Inc. is a Delaware limited liability company with its principal place of business in New York. Kalshi Inc. is the parent company of Kalshi Klear Inc., Kalshi Klear LLC, KalshiEX, and Kalshi Trading LLC (Kalshi Inc. and its subsidiaries are collectively referred to herein as "Kalshi"), and acts in concert with the other entities to advertise, promote, facilitate, operate, and profit from the Kalshi offerings in Louisiana. Kalshi earns revenue, directly or indirectly, from Louisiana users betting on the Kalshi platform and through Kalshi offerings and/or contracts and partnerships, as well as through partnerships with companies operating in Louisiana and/or through Louisiana users as either the provided platform and/or through Kalshi's app infrastructure, handling order matching, clearing, and liquidity.

18. Defendant KalshiEX LLC ("KalshiEX") is a Delaware limited liability company with its principal place of business in New York, New York. KalshiEX is wholly owned by Kalshi Inc. KalshiEX acts in concert with its Kalshi and its subsidiaries.

19. Defendant Kalshi Klear Inc. is a Delaware corporation that maintains its principal place of business in New York, New York, is a wholly owned subsidiary of Kalshi Inc., and is the sole member of Kalshi Klear LLC. Kalshi Klear Inc. acts in concert with its Kalshi and its subsidiaries.

20. Defendant Kalshi Klear LLC is a Delaware limited liability company that maintains its principal place of business in New York, New York. Kalshi Klear LLC acts in concert with the other entities to facilitate, operate, and profit from the Kalshi (and other entity) offerings in Louisiana through improper use of its Derivatives Clearing Organization ("DCO") registration with the CFTC. Kalshi Klear LLC acts in concert with its Kalshi and its subsidiaries.

21. Defendant Kalshi Trading LLC ("Kalshi Trading") is a Delaware limited liability company with headquarters in New York, New York. On information and belief, Kalshi Trading is wholly owned by Kalshi Inc. and serves as a trading entity on KalshiEX's platform; acts as a market maker for "prediction markets" and illegal bets in Louisiana; buys and sells



Certified True and Correct Copy
CertID: 2026111300001

Tangipahoa Parish
Deputy Clerk Of Court

Generated Date:
11/13/2026 8:42 AM

Alteration and subsequent re-filing of this certified copy may violate La. R.S. 14:132, 133, and/or RPC Rule 3.3(a)(3).

wagers on a Kalshi platform; and acts in concert with other entities to facilitate, operate, and profit from the Kalshi (and other) offerings in Louisiana.

**b. Polymarket Defendants**

22. Defendant QCX LLC d/b/a Polymarket US ("Polymarket US") is a Delaware limited liability company with its principal place of business in New York. Polymarket US earns revenue, directly or as a transferee, from the fees paid by Louisiana users betting on the Polymarket platform. Polymarket US acts in concert with Blockratize Inc. and its subsidiaries (Polymarket US, Blockratize Inc., and its other subsidiaries are collectively referred to herein as "Polymarket"). Polymarket earns revenue, directly or indirectly, from Louisiana users betting on the Polymarket US platform. Polymarket also earns revenue through partnerships with companies operating in Louisiana and/or through Louisiana users as either the provided platform and/or through Polymarket app infrastructures, handling order matching, clearing, and liquidity.

23. Defendant Blockratize Inc. ("Blockratize") is a Delaware corporation with its principal place of business in New York, New York; is the parent company of Polymarket US; and acts in concert with other Polymarket entities to advertise, promote, facilitate, operate, and profit from the Polymarket offerings in Louisiana. Blockratize earns revenue, directly or indirectly, from Louisiana users betting on the Polymarket platform and through Polymarket offerings and/or other contracts and partnerships.

24. Defendant QC Tech LLC ("QC Tech") is a Delaware limited liability company with its principal place of business in Boca Raton, Florida. On information and belief, QC Tech is the operational entity that manages the software, platform and code, technology infrastructure, and the website(s) and app(s) through which users access and wager on the Polymarket US platform. QC Tech acts in concert with other Polymarket entities to facilitate, operate, and profit from Polymarket offerings in Louisiana. QC Tech earns revenue, directly or indirectly, from Louisiana users betting on the Polymarket platform and through Polymarket offerings and/or other contracts and partnerships.

25. Defendant QC Clearing LLC ("QC Clearing") is a Delaware limited liability company with its principal place of business in Boca Raton, Florida. On information and belief, QC



Certified True and Correct Copy
CertID: 2026111300001

Tangipahoa Parish
Deputy Clerk Of Court

Generated Date:
11/13/2026 8:42 AM

Alteration and subsequent re-filing of this certified copy may violate La. R.S. 14:132, 133, and/or RPC Rule 3.3(a)(3).

Clearing operates as a clearinghouse for Polymarket and acts in concert with other entities to facilitate, operate, and profit from the Polymarket (and other entity) offerings in Louisiana through improper use of its DCO registration with the CFTC. QC Clearing earns revenue, directly or indirectly, from Louisiana users betting on the Polymarket platform and through Polymarket offerings and/or other contracts and partnerships.

26. Defendant PM Derivatives LLC ("PM Derivatives") is a Delaware limited liability company with its principal place of business in New York, New York. On information and belief, PM Derivatives is a subsidiary and/or affiliate of Polymarket US and/or Blockratize. PM Derivatives acts as a broker for Polymarket on activities for and involving Louisiana users and wagers or bets placed in Louisiana through improper use of its recent designation as a Futures Commission Merchant ("FCM") through the National Futures Association ("NFA") by acting as the intermediary to receive customer bets and funds. PM Derivatives acts in concert with other entities to facilitate, operate, and profit from Polymarket offerings in Louisiana. PM Derivatives earns revenue, directly or indirectly, from Louisiana users betting on the Polymarket platform and through Polymarket offerings and/or other contracts and partnerships.

**c. Robinhood Defendants**

27. Defendant Robinhood Markets, Inc. ("Robinhood Markets") is a Delaware corporation with its principal place of business in Menlo Park, California. Robinhood Markets is the parent company of Robinhood Derivatives, LLC (Robinhood Markets and its subsidiaries are collectively referred to herein as "Robinhood"). On information and belief, Robinhood Markets provides the Robinhood app interface and the digital-wallet system used by Louisiana users to fund their wagers. Robinhood acts in concert with the other entities to advertise, promote, facilitate, operate, and profit from the Robinhood offerings in Louisiana, and earns revenue, directly or indirectly, from Louisiana users betting on the Robinhood platform and through its "Prediction Markets Hub," offerings, and/or contracts and partnerships, including by charging a commission on each wager.

28. Defendant Robinhood Derivatives, LLC ("Robinhood Derivatives") is, on information and belief, a Delaware limited liability company with its headquarters in Chicago, Illinois, and



Certified True and Correct Copy
CertID: 2026111300001

Tangipahoa Parish
Deputy Clerk Of Court

Generated Date:
11/13/2026 8:42 AM

Alteration and subsequent re-filing of this certified copy may violate La. R.S. 14:132, 133, and/or RPC Rule 3.3(a)(3).

a wholly owned subsidiary of Robinhood Markets. Robinhood Derivatives acts as a broker for the Robinhood offerings on activities for and involving Louisiana users and wagers placed in Louisiana through improper use of its designation as a FCM with the CFTC and NFA, acting as the intermediary to receive customer bets and funds, and offering event contracts through Robinhood's Prediction Markets Hub. On information and belief, Robinhood does not operate its own DCM for these contracts; instead, Robinhood Derivatives routes Louisiana users' wagers to one or more third-party DCMs, including KalshiEX, Interactive Brokers' ForecastEx, Rothera Exchange and Clearing LLC, and, beginning in September 2026 for a selection of football contracts, the CFTC-regulated exchange and clearinghouse operated by Crypto.com and OG.com. On information and belief, Robinhood Markets holds or will hold equity stakes in Crypto.com and OG.com in connection with that arrangement. On information and belief, Robinhood Derivatives handles the legal onboarding, asset compliance, and risk checks for Louisiana traders. Robinhood Derivatives acts in concert with Robinhood and the other Defendants to facilitate, operate, and profit from the Robinhood (and other) offerings in Louisiana.

29. Defendant ForecastEx LLC ("ForecastEx") is, on information and belief, a CFTC-regulated DCM, affiliated with Interactive Brokers, that serves as an execution venue for Robinhood's event contracts, in particular political and macroeconomic contracts, including for Louisiana users. ForecastEx acts in concert with the other entities to facilitate, operate, and profit from the Robinhood (and other) offerings in Louisiana through improper use of its DCM registration with the CFTC, and earns revenue, directly or indirectly, from Louisiana users betting on the Robinhood platform.

30. Defendant Rothera Exchange and Clearing LLC ("Rothera"), formerly known as LedgerX LLC d/b/a MIAXdx, is, on information and belief, a CFTC-licensed DCM and DCO operated through a joint venture between Robinhood and Susquehanna International Group. On information and belief, Rothera acts as a specialized market maker that injects liquidity into the Robinhood prediction markets, ensuring that a Louisiana user seeking to buy or sell an event contract is provided an immediate price and an available counterparty, functioning, like the market makers used by the other Defendants, as the "house" of a



Certified True and Correct Copy
CertID: 2026111300001

Tangipahoa Parish
Deputy Clerk Of Court

Generated Date:
11/13/2026 8:42 AM

Alteration and subsequent re-filing of this certified copy may violate La. R.S. 14:132, 133, and/or RPC Rule 3.3(a)(3).

gambling operation. Rothera acts in concert with the other entities to facilitate, operate, and profit from the Robinhood offerings in Louisiana, and earns revenue, directly or indirectly, from Louisiana users betting on the Robinhood platform.

**d. Crypto.com Defendants**

31. Defendant Foris Holdings US, Inc. ("Foris") is, on information and belief, a Delaware corporation and the United States parent of the Crypto.com group of companies, including Foris DAX, Inc (Foris Holdings US, Inc., Foris DAX, Inc., North American Derivatives Exchange, Inc., and Foris DAX FCM, LLC are collectively referred to herein as "Crypto.com"). On information and belief, Foris works with the group's non-U.S. holding companies, including Foris DAX MT Limited, a Malta entity, and controls the group's U.S. operating subsidiaries. Foris acts in concert with the other entities to advertise, promote, facilitate, operate, and profit from the Crypto.com offerings in Louisiana, and earns revenue, directly or indirectly, from Louisiana users.

32. Defendant Foris DAX, Inc. d/b/a Crypto.com ("Foris DAX") is a corporation organized under the laws of Delaware with its principal place of business in Tyler, Texas. On information and belief, Foris DAX is a subsidiary of Foris. Foris DAX operates the retail Crypto.com platform and application through which the Crypto.com offerings are made available to users, including in Louisiana. On information and belief, Foris DAX is licensed as a money transmitter in 44 States, the District of Columbia, and Puerto Rico (NMLS ID 1966158) and is a member of the NFA (ID No. 0567284). On information and belief, Foris DAX offers prediction-market "event contracts," including on sports, elections, financials, and culture, within the Crypto.com app, which are listed, cleared, and settled through the affiliated CFTC-regulated exchange and clearinghouse described below. Foris DAX acts in concert with the other entities to advertise, promote, facilitate, operate, and profit from Crypto.com offerings in Louisiana, and earns revenue, directly or indirectly, from Louisiana users betting on the Crypto.com platform and through its offerings, contracts, and partnerships.

33. Defendant North American Derivatives Exchange, Inc. d/b/a Crypto.com | Derivatives North America ("CDNA") and OG.com, formerly known as Nadex and, on information



Certified True and Correct Copy
CertID: 2026111300001

Tangipahoa Parish
Deputy Clerk Of Court

Generated Date:
11/13/2026 8:42 AM

Alteration and subsequent re-filing of this certified copy may violate La. R.S. 14:132, 133, and/or RPC Rule 3.3(a)(3).

and belief, acquired by the Crypto.com group in 2022, is registered with the CFTC as both a DCM and a DCO. CDNA is the exchange and clearinghouse through which the Crypto.com app's prediction markets and the OG.com platform list, clear, and settle sports and other event contracts, including to Louisiana users. CDNA acts in concert with the other entities to facilitate, operate, and profit from the Crypto.com (and other entities) offerings in Louisiana through improper use of its DCM and DCO registrations with the CFTC, and earns revenue, directly or indirectly, from Louisiana users betting on the Crypto.com and OG.com platforms.

34. On information and belief, OG.com is a standalone prediction-market platform that the Crypto.com group launched. OG.com is reportedly valued at approximately $5 billion and backed by investors including Citadel Securities and Robinhood. OG.com operates on the CDNA exchange and clearinghouse. Through the OG.com platform, the Crypto.com group offers sports, election, financial, cultural, and crypto event contracts, including through a "parlay builder," to users in all 50 States, including Louisiana. On information and belief, OG.com functions as prediction-market infrastructure and a white-label clearing and liquidity layer for other operators, and provides the backend exchange and clearing capacity relied upon by other event-contract apps, including Robinhood.

35. Defendant Foris DAX FCM, LLC d/b/a OG Broker ("OG Broker") is, on information and belief, the FCM affiliate of the Crypto.com group through which U.S. customers, including Louisiana users, are introduced to CDNA/OG.com "event contracts," clear those contracts, and hold customer margin and funds for those contracts. OG Broker acts in concert with the other entities to facilitate, operate, and profit from the Crypto.com (and OG.com) offerings in Louisiana, and earns revenue, directly or indirectly, from Louisiana users betting on the Crypto.com and OG.com platforms.

**e. Coinbase Defendants**

36. Defendant Coinbase Global, Inc. ("Coinbase Global") is a corporation that, on information and belief, reincorporated from Delaware to Texas on or about December 15, 2025, with its principal executive offices in New York, New York. Coinbase Global is the parent company of Coinbase Financial Markets, Inc. (Coinbase Global and its subsidiaries are



Certified True and Correct Copy
CertID: 2026111300001

Tangipahoa Parish
Deputy Clerk Of Court

Generated Date:
11/13/2026 8:42 AM

Alteration and subsequent re-filing of this certified copy may violate La. R.S. 14:132, 133, and/or RPC Rule 3.3(a)(3).

collectively referred to herein as "Coinbase"). On information and belief, Coinbase Global provides the Coinbase app interface, software architecture, and the digital wallets holding the funds for "event-contract" trades. Coinbase Global acts in concert with the other entities to advertise, promote, facilitate, operate, and profit from the Coinbase offerings in Louisiana, and earns revenue, directly or indirectly, from Louisiana users betting on the Coinbase platform and through Coinbase offerings, contracts, and partnerships.

37. Defendant Coinbase Financial Markets, Inc. ("CFM") is, on information and belief, a wholly owned subsidiary of Coinbase Global that operates as a regulated broker registered as an FCM with the CFTC and a member of the NFA. On information and belief, CFM handles user onboarding, identity verification, financial compliance, and the routing of customer wagers, and acts as the intermediary to receive customer bets and funds. Rather than matching wagers internally or on a Coinbase-operated exchange, CFM routes Louisiana users' wagers directly onto the "order book" of KalshiEX, an independent, CFTC-regulated DCM that is Coinbase's execution venue. CFM acts in concert with Coinbase and the other Defendants to facilitate, operate, and profit from the Coinbase offerings in Louisiana.

**f. Novig Defendants**

38. Defendant Ludlow Exchange, LLC d/b/a Novig ("Novig") is, on information and belief, the corporate entity that owns and operates the Novig sports prediction-market platform. In June 2026, Novig secured approval from the CFTC to operate as a DCM. Unlike brokers that route orders to third-party exchanges, Novig is, itself, the exchange: Novig matches alleged "peer-to-peer trades" directly on Novig's internal "order books," and Novig is the consumer-facing brand, mobile application, and trading interface of Ludlow Exchange. Novig acts in concert with the other Defendants to advertise, promote, facilitate, operate, and profit from the Novig offerings in Louisiana, and earns revenue, directly or indirectly, from Louisiana users betting on its platform.

**g. Underdog Defendants**

39. Defendant Underdog Sports Holdings, Inc. ("Underdog") is, on information and belief, a corporation that operates an online daily fantasy-sports and prediction-market platform and



Certified True and Correct Copy
CertID: 2026111300001

Tangipahoa Parish
Deputy Clerk Of Court

Generated Date:
11/13/2026 8:42 AM

Alteration and subsequent re-filing of this certified copy may violate La. R.S. 14:132, 133, and/or RPC Rule 3.3(a)(3).

serves as the parent and umbrella brand for the Underdog offerings, including for Louisiana users (Underdog and its subsidiaries and related entities and its subsidiaries are collectively referred to herein as "Underdog"). On information and belief, Underdog embeds its prediction markets directly into the core Underdog app alongside its daily fantasy-sports and "Pick'em" games. Underdog acts in concert with the other entities to advertise, promote, facilitate, operate, and profit from the Underdog offerings in Louisiana, and earns revenue, directly or indirectly, from Louisiana users betting on its platform and through its offerings, contracts, and partnerships.

40. Defendant Underdog Exchange DCM, Inc. ("Underdog Exchange"), formerly known as Aristotle Exchange, is, on information and belief, the exchange entity through which the Underdog offerings are traded. On information and belief, Underdog acquired Aristotle Exchange in early 2026, thereby acquiring its DCM and DCO licenses from the CFTC. Underdog Exchange hosts the "order books" and matches the "yes/no" buyers and sellers of the Underdog "event contracts," including for Louisiana users. Underdog Exchange acts in concert with the other entities to facilitate, operate, and profit from the Underdog offerings in Louisiana through improper use of its DCM and DCO registrations with the CFTC, and earns revenue, directly or indirectly, from Louisiana users betting on the Underdog platform.

41. Defendant UDM, LLC d/b/a Underdog Predict ("UDM") is, on information and belief, the brokerage arm of the Underdog offerings, registered as an FCM with the CFTC. UDM manages customer account balances, validates user sign-ups, and routes Louisiana users' wagers onto the Underdog Exchange order book. UDM acts in concert with the other entities to facilitate, operate, and profit from the Underdog offerings in Louisiana, and earns revenue, directly or indirectly, from Louisiana users betting on the Underdog platform.

42. Defendant IG Group Holdings PLC ("IG Group") is, on information and belief, a public limited company organized under the laws of the United Kingdom that, on or about July 30, 2026, agreed to acquire Underdog for consideration of up to approximately $1.3 billion. On information and belief, IG Group is or will become the parent company of Underdog



Certified True and Correct Copy
CertID: 2026111300001

Tangipahoa Parish
Deputy Clerk Of Court

Generated Date:
11/13/2026 8:42 AM

Alteration and subsequent re-filing of this certified copy may violate La. R.S. 14:132, 133, and/or RPC Rule 3.3(a)(3).

and acts, or upon completion of the acquisition will act, in concert with the other entities to advertise, promote, facilitate, operate, and profit from the Underdog offerings in Louisiana.

**h. Gemini Defendants**

43. Defendant Gemini Space Station, Inc. ("Gemini Space Station") is a corporation incorporated in the State of Nevada with its principal executive office in New York, New York. Gemini Space Station is the parent and/or holding company of Gemini Titan, LLC, Gemini Olympus, LLC, and Gemini Trust Company, LLC (Gemini Space Station and its subsidiaries and related entities are collectively referred to herein as "Gemini"). On information and belief, Gemini Space Station developed the proprietary, in-house derivatives technology stack for the Gemini Predictions platform and provides the retail web interface through which Louisiana users create accounts and view live "event contract" prices. Gemini Space Station acts in concert with the other entities to advertise, promote, facilitate, operate, and profit from the Gemini offerings in Louisiana, and earns revenue, directly or indirectly, from Louisiana users betting on the Gemini platform and through Gemini offerings, contracts, and partnerships.

44. Defendant Gemini Titan, LLC ("Gemini Titan") is, on information and belief, a wholly owned subsidiary of Gemini Space Station that serves as the trading venue and exchange for the Gemini Predictions platform, holding the DCM license with the CFTC required to list yes/no "event contracts." In December 2025, Gemini Titan began operating the Gemini Predictions platform through which Gemini lists and offers sports, election, and other "event contracts," including to Louisiana users. Gemini Titan acts in concert with the other entities to facilitate, operate, and profit from the Gemini offerings in Louisiana through improper use of its DCM registration with the CFTC, and earns revenue, directly or indirectly, from Louisiana users betting on the Gemini platform.

45. Defendant Gemini Olympus, LLC ("Gemini Olympus") is, on information and belief, a wholly owned subsidiary of Gemini Space Station that serves as the clearinghouse for the Gemini Predictions platform, holding a DCO license with the CFTC through which it manages the clearing, margin tracking, and financial settlement of the Gemini Predictions



Certified True and Correct Copy
CertID: 2026111300001

Tangipahoa Parish
Deputy Clerk Of Court

Generated Date:
11/13/2026 8:42 AM

Alteration and subsequent re-filing of this certified copy may violate La. R.S. 14:132, 133, and/or RPC Rule 3.3(a)(3).

"event contracts," including for Louisiana users. Gemini Olympus acts in concert with the other entities to facilitate, operate, and profit from the Gemini offerings in Louisiana through improper use of its DCO registration with the CFTC, and earns revenue, directly or indirectly, from Louisiana users betting on the Gemini platform.

46. Defendant Gemini Trust Company, LLC ("Gemini Trust") is, on information and belief, a New York limited purpose trust company and subsidiary and/or affiliate of Gemini Space Station that holds and processes user funds for the Gemini offerings, including for Louisiana users. Gemini Trust acts in concert with the other entities to facilitate, operate, and profit from the Gemini offerings in Louisiana, and earns revenue, directly or indirectly, from Louisiana users betting on the Gemini platform.

**i. ProphetX Defendants**

47. Defendant ProphetX OpCo LLC d/b/a ProphetX ("ProphetX") is, on information and belief, the single corporate entity that operates the ProphetX prediction-market platform. On information and belief, in June 2026 ProphetX secured dual approval from the CFTC as both a DCM and a DCO, achieving full vertical integration. On information and belief, ProphetX lists the contracts, provides the order books, and clears and settles all user funds entirely under its own corporate roof. ProphetX acts in concert with the other Defendants to advertise, promote, facilitate, operate, and profit from the ProphetX offerings in Louisiana, and earns revenue, directly or indirectly, from Louisiana users betting on its platform.

## III. JURISDICTION AND VENUE

48. This Court has jurisdiction over the State's claims because they arise exclusively under Louisiana law.

49. This Court has personal jurisdiction over the entities above collectively defined as Kalshi, Polymarket, Robinhood, Crypto.com, Coinbase, Novig, Underdog, Gemini, ProphetX, and those named herein and above (collectively, "Defendants") pursuant to La. C.C.P. art. 6 and La. R.S. 13:3201, 51:1407(A), 51:1418, and related statutes because Defendants engage in consumer transactions within the State of Louisiana, purposefully direct their



Certified True and Correct Copy
CertID: 2026111300001

Tangipahoa Parish
Deputy Clerk Of Court

Generated Date:
11/13/2026 8:42 AM

Alteration and subsequent re-filing of this certified copy may violate La. R.S. 14:132, 133, and/or RPC Rule 3.3(a)(3).

actions toward the State of Louisiana, and have the requisite minimum contacts within the State of Louisiana to permit this Court to exercise jurisdiction.

50. This Court also has personal jurisdiction over Defendants Kalshi and Polymarket because they purposefully availed themselves of the forum state by filing declaratory actions challenging Louisiana law in Louisiana federal courts, concerning the same illegal conduct that is the subject of this suit. *See KalshiEX, LLC v. Murrill, et al.*, No. 1:26-cv-4476 (WDLA); *QCX LLC v. Murrill, et al.*, No. 2:26-cv-2482 (EDLA).

51. Venue is proper in this judicial district pursuant to La. C.C.P. art. 42, La. R.S. 51:1407, and related statutes. Defendants provide their services throughout the State of Louisiana and have purposefully directed their activities and availed themselves of the laws in the State of Louisiana. The events giving rise to the claims herein arose, in substantial part, in this State, including in this Parish.

## IV. FACTUAL ALLEGATIONS

### A. Louisiana Heavily, Strictly, and Historically Regulates Gambling Within the State.

52. The regulation of gambling is "concededly within the police powers of a state." *Ah Sin v. Wittman*, 198 U.S. 500, 505–06 (1905). Indeed, the States, especially Louisiana, have a lengthy history of regulation in the gambling sphere.

53. That is by design. As Congress stated in the Interstate Horseracing Act: "The States should have the primary responsibility for determining what forms of gambling may legally take place within their borders." 15 U.S.C. § 3001(a)(1).

54. Like other forms of gambling, sports betting has been illegal throughout the States for much of the country's history. *See Murphy v. NCAA*, 584 U.S. 453, 459–60 (2018). But it remains clear that sports betting falls within States' regulatory authority. For example, in 2018, the United States Supreme Court held that the Professional and Amateur Sports Protection Act was "incompatible with the system of 'dual sovereignty' embodied in the Constitution," paving the way for States to authorize sports wagering on their own terms. *Id.* at 458, 463.

55. Pursuant to that scheme of state regulation, the Louisiana Legislature, "desiring to protect individual rights…and promoting the health, safety, education, and welfare of the people, including the children of this state who are our most previous and valuable resource" found



Certified True and Correct Copy
CertID: 2026111300001

Tangipahoa Parish
Deputy Clerk Of Court

Generated Date:
11/13/2026 8:42 AM

Alteration and subsequent re-filing of this certified copy may violate La. R.S. 14:132, 133, and/or RPC Rule 3.3(a)(3).

a "compelling interest in protecting its citizens and children from certain activities and influences which can result in irreparable harm, and "develop[ed] a controlled well-regulated gaming industry" within its borders. La. R.S. 14:90.3(A). "Gambling has long been recognized as a crime in the state of Louisiana and[,] despite the enactment of many legalized gaming activities[,] remains a crime" to this day, with online gambling "embod[ying] the very activity that the legislature seeks to prevent." *Id.*; La. Const. art. XII, § 6(C).

56. When the Louisiana Legislature follows the strict constitutional procedure for authorizing "a new form of gaming, gambling, or wagering," La. Const. art. XII, § 6(C)(1)(a), anyone who engages in that now-lawful activity must be licensed and regulated by the relevant state regulator.

57. The Louisiana Gaming Control Board ("the Board") is charged with "regulat[ing] all gaming activities and operations in the state." La. R.S. 27:15(A); *see also* La. R.S. 27:11. Pursuant to that authority, the Board adopts "policies and rules as are necessary to the efficient, efficacious, and thorough conduct of the business of regulating and controlling the gaming operations and activities under its jurisdiction," La. R.S. 27:15(B)(8)(a), among other things. The Louisiana State Police ("LSP") Gaming Enforcement Division acts as the licensing and enforcement arm of the Board.

58. Louisiana law defines "gambling" as "the intentional conducting, or directly assisting in the conducting, as a business, of any game, contest, lottery, or contrivance whereby a person risks the loss of anything of value in order to realize a profit." La. R.S. 14:90(A)(1)(a).

59. A relatively new aspect of the State's heavily regulated gaming industry is "the development of the Internet and the information super highway allowing communication and exchange of information from all parts of the world." La. R.S. 14:90.3(A). Recognizing both "the beneficial effects" of the Internet and the potential harms, the State "has an obligation and responsibility to protect its citizens, and in particular its youngest citizens, from the pervasive nature of gambling which can occur via the Internet and the use of computers connected to the Internet." *Id.*



Certified True and Correct Copy
CertID: 2026111300001

Tangipahoa Parish
Deputy Clerk Of Court

Generated Date:
11/13/2026 8:42 AM

Alteration and subsequent re-filing of this certified copy may violate La. R.S. 14:132, 133, and/or RPC Rule 3.3(a)(3).

60. The Louisiana Legislature defines "gambling by computer" as "the intentional conducting, or directly assisting in the conducting as a business of any game, contest, lottery, or contrivance whereby a person risks the loss of anything of value in order to realize a profit when accessing the internet, World Wide Web, or any part thereof by way of any computer, computer system, computer network, computer software, or any server." La. R.S. 14:90.3(B).

61. There are significant penalties for illegal gambling by computer. For one, "[a]ny applicant, licensed entity, platform provider, geolocation provider, gaming content supplier, promoter, endorser, media affiliate, or any other person who knowingly supports or facilitates the operation, conduct, or promotion of gambling by computer within" the State "shall be fined not more than twenty thousand dollars, or imprisoned with or without hard labor for not more than five years, or both." La. R.S. 14:90.3(F). Any financial penalty is "doubled when the knowing support or facilitation of the operation or conduct of gambling by computer involves an individual under twenty-one years of age." *Id.*

62. For another, "anyone who designs, develops, manages, supervises, maintains, provides, or produces any computer services, computer system, computer network, computer software, or any server providing a Home Page, web site, or any other product accessing the internet, World Wide Web, or any part thereof offering to any client for the primary purpose of the conducting as a business [] any game, contest, lottery, or contrivance whereby a person risks the loss of anything of value in order to realize a profit shall be fined not more than one hundred thousand dollars, or imprisoned with or without hard labor for not more than five years, or both." La. R.S. 14:90.3(E).

63. Relatedly, Louisiana law prohibits a "merchant payment processor" from "accept[ing] or process[ing] any financial transaction in connection with the participation of a person physically located in this state who is gambling by computer." La. R.S. 14:90.3(G)(1). Louisiana law also prohibits a "platform provider" from "receiv[ing] or transmit[ting] through its service any exchange of information that it reasonably believes is or will be sent in connection with the participation of a person in gambling by computer." La. R.S. 14:90.3(H)(1).



Certified True and Correct Copy
CertID: 2026111300001

Tangipahoa Parish
Deputy Clerk Of Court

Generated Date:
11/13/2026 8:42 AM

Alteration and subsequent re-filing of this certified copy may violate La. R.S. 14:132, 133, and/or RPC Rule 3.3(a)(3).

64. The Louisiana Legislature, through Act No. 215 of the 2020 Regular Session, required a proposition to appear on the November 3, 2020 "ballot in every parish to determine whether sports wagering activities and operations shall be permitted in the parish." La. R.S. 18:1300.24. Fifty-five of Louisiana's sixty-four parishes voted "yes" to authorize sports wagering in their respective parishes. In 2021, the Louisiana Legislature "approved legislation establishing a licensing framework for retail and online sports betting in the fifty-five Louisiana parishes that voted to authorize sports betting," including the "conducting, application, licensing, permitting, enforcement, collection of fees and taxes, ad regulation of racehorse wagering and sports wagering."[1]

65. Louisiana law provides an exemption for "sports wagering" under the general prohibition on gambling. Under that provision, "[s]ports wagering shall not be considered gambling for purposes of this Section so long as the wagering is conducted in compliance with Chapter 10 of Title 27 of the Louisiana Revised Statutes of 1950 or Chapter 10 of Subtitle XI of Title 47 of the Louisiana Revised Statutes of 1950." La. R.S. 14:90(E); La. R.S. 14:90.3(P).

66. Under those cited provisions, Louisiana law prohibits any "person, business, or legal entity" from "operat[ing] a sports book without first being licensed by the board." La. R.S. 27:604(A)(1).

67. A "sports book" is "the offering of sports wagering by an operator on a licensee's premises or through a sports wagering platform." La. R.S. 27:602(A)(21).

68. A "sports wager" or "sports bet" is defined as "a sum of money or representation of value risked by a player on an occurrence associated with a sports event for which the outcome is uncertain." La. R.S. 27:602(A)(23). "The term includes but is not limited to single-game bets, teaser bets, parlay bets, over-under bets, moneyline bets, pools, exchange wagering, in-game wagering, in-play bets, proposition bets, and straight bets." *Id.*

69. "Sports wagering," relatedly, "means the acceptance of wagers on sports events or on portions of a sports event or on the individual performance or statistics of athletes or

[1] *See Louisiana Gaming Control Board 26th Annual Report to the Louisiana State Legislature*, Chairman's Letter, p.4, perma.cc/DA96-QST9 (last visited Nov. 4, 2026).



Certified True and Correct Copy
CertID: 2026111300001

Tangipahoa Parish
Deputy Clerk Of Court

Generated Date:
11/13/2026 8:42 AM

Alteration and subsequent re-filing of this certified copy may violate La. R.S. 14:132, 133, and/or RPC Rule 3.3(a)(3).

participants in a sports event or a combination of sports events, by any system or method of wagering." La. R.S. 27:602(A)(24).

70. A "sports wagering platform" is defined as "an integrated system of hardware, software, or applications, including mobile applications and servers, through which an operator conducts the business of offering sports wagering." La. R.S. 27:602(A)(27).

71. Pursuant to the strict limitations on sports wagering, the Board must "issue a sports wagering platform provider permit to a suitable person who desires to contract with a licensee to manage or operate all or a portion of a licensee's sports book line-of-business." La. R.S. 27:605(A)(1). Without such a permit, no "person shall [] manage or operate all or a portion of a licensee's sports book." *Id.*

72. Louisiana law further restricts the number of "licenses to operate sports books" to "twenty." La. R.S. 27:604(B)(1).[2] However, Louisiana law also allows a sports wagering "licensee" to "contract for operation of its onsite or electronic wagering with a sports wagering platform provider"—in other words, the entity licensed by the Board to operate as a sports book may allow another entity to operate the sports wagering platform on the licensee's behalf. *See id.* at (F)(1).

73. In 2025, the Louisiana Legislature also made it unequivocally clear that betting on elections is prohibited in Louisiana. La. R.S. 18:1461.7(A)(10) states:

> No person shall knowingly, willfully, or intentionally:
>
> Participate in any bet or wager that is based upon any contingency whatsoever that arises from an election conducted pursuant to this Title, including any of the following:
>
> (a) Making an offer to bet or wager on an election.
> (b) Accepting a bet or wager on an election.
> (c) Taking a share or monetary interest in a bet or wager on an election.
> (d) Providing money to be used by another person in making a bet or wager on an election.
> (e) Acting in any manner to become a party to a bet or wager on an election.

[2] *See Licensed Wagering Platforms in Louisiana*, Louisiana Gaming Control Board, perma.cc/2TQ9-GWL2 (last visited Nov. 2, 2026).



Certified True and Correct Copy
CertID: 2026111300001

Tangipahoa Parish
Deputy Clerk Of Court

Generated Date:
11/13/2026 8:42 AM

Alteration and subsequent re-filing of this certified copy may violate La. R.S. 14:132, 133, and/or RPC Rule 3.3(a)(3).

74. Louisiana law also seeks to protect the integrity of all gaming operations in the State. To that end, Louisiana bans insider trading and certain persons from engaging in gaming, including sports wagering. *See* LAC 42:VI-501; LAC 42:VI-523.

75. Additionally, Louisiana law makes it "unlawful for a prohibited player to wager on a sports event, personally or through an individual or proxy" and "for a person or entity to facilitate or place a sports wager on behalf of a prohibited player." La. R.S. 14:90.8(A)(1)–(2). Such prohibited persons include persons under the age of 21, self-excluded persons, persons in "voted-out" parishes, and persons who may have inside information or may be able to affect the betted-on event (*e.g.*, athletes, coaches, referees, or other officials, staff of a participant or team that is participating in the event, jockeys, horsemen and their employees, and racing officials). *See* La. R.S. 27:608(A), (B), (C).

76. As explained more fully below, no Defendant abides by Louisiana's gambling, gambling-by-computer, sports-wagering, or other gaming laws. Despite being unlicensed and unpermitted to offer sports wagering and related services in Louisiana, Defendants do exactly that. Their current and ongoing activities within the State thus constitute violations of Louisiana law.

**B. Defendants Facilitate and/or Operate Online Sports Wagering and Online Gambling as a Business.**

**a. Kalshi**

77. Tarek Mansour and Luana Lopes Lara founded Kalshi in 2018. "Kalshi" means "everything" in Arabic, reflecting the founders' vision of allowing people to "bet on everything."[3]

78. Kalshi is a self-described "prediction market" platform that allows users to make bets on "real world outcomes" across a wide range of topics,[4] from politics to weather predictions and more:

[3] Oliver Roeder, *This 29-year-old is worth $15b and wants you to bet on everything*, perma.cc/Z9B6-DZ4Q (Feb. 11, 2026).

[4] Kevin Wolff, *Where is Kalshi Legal in the U.S.? Full State-by-State Guide (2026)*, perma.cc/4M33-4BMQ (Oct. 29, 2026).



Certified True and Correct Copy
CertID: 2026111300001

Tangipahoa Parish
Deputy Clerk Of Court

Generated Date:
11/13/2026 8:42 AM

Alteration and subsequent re-filing of this certified copy may violate La. R.S. 14:132, 133, and/or RPC Rule 3.3(a)(3).

****COMPLEX LITIGATION****









Certified True and Correct Copy
CertID: 2026111300001

Tangipahoa Parish
Deputy Clerk Of Court

Generated Date:
11/13/2026 8:42 AM

Alteration and subsequent re-filing of this certified copy may violate La. R.S. 14:132, 133, and/or RPC Rule 3.3(a)(3).




79. In early 2025, Kalshi announced its entry into the sports betting market just ahead of the Super Bowl. Today, sports betting constitutes a substantial percentage of Kalshi's platform. Kalshi now holds itself out as offering "sports betting" in all 50 states."[5]

80. In August and September 2025, Kalshi expanded its sports betting options by offering spread bets (a bet on the difference in score between two competing sports teams), over/under wagers (a bet on how many total points will be scored in a sports game), and proposition bets (bets on specific things that may occur within a sports game, such as the number of touchdowns a football player might score during the game).

81. In recent months, Kalshi began offering "combo" bets, known to sports bettors as a "parlay." These bets link the outcomes of multiple wagers, where each wager must win to get a payout. To place a "combo" bet, a Kalshi user links together multiple wagers and submits a Request for Quote ("RFQ"). RFQs are reviewed by designated entities who have access to Kalshi's Application Programming Interface ("API") and act like a traditional casino "house," calculating odds and prices for each combo bet.

---

[5] Dustin Goucher, *Ten Times Kalshi Said People Could Bet On Things*, Event Horizon, perma.cc/DT9Y-6C7B (Apr. 3, 2025).



Certified True and Correct Copy
CertID: 2026111300001

Tangipahoa Parish
Deputy Clerk Of Court

Generated Date:
11/13/2026 8:42 AM

Alteration and subsequent re-filing of this certified copy may violate La. R.S. 14:132, 133, and/or RPC Rule 3.3(a)(3).

****COMPLEX LITIGATION****

82. From January to June of 2025—the first five months Kalshi offered sports betting—bettors wagered more than $1 billion on 3.4 million sports wagers. Sports event wagers comprised approximately 70% of Kalshi's trading volume between February 25, 2025 and May 17, 2025. Kalshi made more from sports wagers than Louisiana-permitted sports wagering platform providers DraftKings or FanDuel over the course of the same February through May timeframe.[6]

83. By July 2025, Kalshi announced that it "crossed $2 billion in sports trading volume" in the preceding 6 months.[7] For calendar year 2025, Kalshi had $22.88 billion in volume, 89% of which was sports wagering. Kalshi made $263.5 million in fee revenue in 2025, with $234.6 million of that coming from sports wagering.[8]

84. Kalshi makes that money "by charging a transaction fee on the expected earnings of the contract."[9]

85. As of October 29, 2026, Kalshi had current operations in over 40 States, including Louisiana.[10]

86. Kalshi operates its online betting platform on its website at https://kalshi.com and through its mobile applications for Android and Apple iOS devices. The platform is readily accessible to Louisiana residents and does not restrict access based on location. Any Louisianian aged 18 or older can create an account, deposit funds, and place bets from anywhere in the State, regardless of whether that person is under the legal gambling age of 21, has self-excluded from participating in gambling, including sports wagering online, or is located in a "voted-in" parish for sports wagering.

87. Kalshi is not licensed as a sports wagering licensee in Louisiana, is not permitted as a sports wagering platform provider in Louisiana, does not abide by the same licensing, permitting, regulatory, compliance, and/or taxation as legal operators, does not provide the same

---

[6] *See* Kaitlyn Radde, *Prediction markets' trading volume doubled between May and July, largely driven by sports*, Pew Research Center, perma.cc/5QJH-J4AZ (Sept. 23, 2026).
[7] kalshi, Post on Instagram, perma.cc/2BHZ-6PW5 (July 16, 2025).
[8] Daniel O'Boyle, *Kalshi Fee Revenue In 2025 Was $263.5 Million, With 89% Coming From Sports*, InGame, perma.cc/ZU4Q-9CR5 (last updated Apr. 14, 2026).
[9] *How does Kalshi make money?*, Kalshi, perma.cc/SJ8G-WJF8 (Mar. 17, 2026).
[10] Wolff, *supra* n.4.



Certified True and Correct Copy
CertID: 2026111300001

Tangipahoa Parish
Deputy Clerk Of Court

Generated Date:
11/13/2026 8:42 AM

Alteration and subsequent re-filing of this certified copy may violate La. R.S. 14:132, 133, and/or RPC Rule 3.3(a)(3).

consumer protections required of and offered by legal sportsbook operators in the State, and does not comply with Louisiana gaming laws.

88. The State has confirmed through public-protection investigations that Kalshi does offer, and continues to offer, sports wagering and other prohibited forms of gaming on its website and through its mobile applications in Tangipahoa Parish and has accepted bets from Louisiana citizens living in Tangipahoa Parish.

89. Kalshi does not pay any taxes on its revenue derived from operating in Louisiana, let alone pay the required 21.5% gaming tax on its "net gaming proceeds from sports wagering offered to consumers within this state" as required by La. R.S. 27:625.

90. Recognizing that its activities constitute illegal gambling in the State of Louisiana, Kalshi sued the Attorney General and other state defendants in the Western District of Louisiana on October 23, 2026, seeking a declaratory judgment that the State violates the Supremacy Clause by threatening to enforce its state laws regarding illegal gambling against Kalshi. *KalshiEX, LLC v. Murrill, et al.*, No. 1:26-cv-4476 (WDLA).

91. In its lawsuit against the Attorney General and others, Kalshi effectively concedes it is operating in violation of Louisiana law by operating its online sports wagering platform, but Kalshi uses the term "event contracts" to avoid blatant admission of wrongdoing:

   i. Kalshi "operates a federally DCM on which the [CFTC] has permitted it to trade sports event contracts." Complaint, ¶ 1.

   ii. "Sports wagering is exempt from [state] prohibitions only if it is 'conducted in compliance with' Louisiana's sports-wagering laws. *Id.* ¶ 3 (citing La. R.S. 14:90(E)).

   iii. "... Kalshi may not offer sports event contracts in Louisiana unless the State grants it a license, but Kalshi could not operate within Louisiana's licensing regime." *Id.* ¶ 9.

   iv. "Kalshi offers many kinds of event contracts related to an array of substantive areas like economics, finance, climate, technology, health, crypto, popular culture, and sports." *Id.* ¶ 63.



Certified True and Correct Copy
CertID: 2026111300001

Tangipahoa Parish
Deputy Clerk Of Court

Generated Date:
11/13/2026 8:42 AM

Alteration and subsequent re-filing of this certified copy may violate La. R.S. 14:132, 133, and/or RPC Rule 3.3(a)(3).

****COMPLEX LITIGATION****

v. "If Kalshi is forced to cease offering sports event contracts to Louisiana residents," it will allegedly violate federal law. *Id.* ¶ 91.

**b. Polymarket**

92. Shayne Coplan founded Polymarket in 2020.[11] According to its website, Polymarket "is the world's largest prediction market."[12]

93. Polymarket returned to the United States after a four-year banishment arising from a settlement with the CFTC in January 2022.[13]

94. Polymarket allows its users to "trade on everything" and covers a vast array of topics for users' betting preferences, from election outcomes to weather trends to AI-company growth:




[11] *Who owns Polymarket? Ownership structure explained (2026)*, Revenue Memo, perma.cc/8TSP-YWRL (Jul. 12, 2026).
[12] Polymarket, *What is Polymarket*, perma.cc/9LXW-266V (May 2, 2026).
[13] Ben Horney, *Polymarket Returns to U.S. After Nearly Four Years*, Front Office Sports, perma.cc/MA2W-6AD3 (Dec. 3, 2025).



Certified True and Correct Copy
CertID: 2026111300001
Tangipahoa Parish
Deputy Clerk Of Court
Generated Date:
11/13/2026 8:42 AM
Alteration and subsequent re-filing of this certified copy may violate La. R.S. 14:132, 133, and/or RPC Rule 3.3(a)(3).







95. Unlike Kalshi, which accepts various forms of currency, Polymarket requires the use of cryptocurrency to engage in betting on their platform.[14]

96. Like Kalshi, Polymarket recently joined the sports betting game. Upon its return to the U.S., Polymarket significantly expanded its operations, with a focus on sports betting.

---

[14] *How Does Polymarket Work: A Beginner's Guide to Trading Sports on Polymarket*, Mile High Sports, perma.cc/35U6-W2QD (last visited Oct. 30, 2026).



Certified True and Correct Copy
CertID: 2026111300001

Tangipahoa Parish
Deputy Clerk Of Court

Generated Date:
11/13/2026 8:42 AM

Alteration and subsequent re-filing of this certified copy may violate La. R.S. 14:132, 133, and/or RPC Rule 3.3(a)(3).

97. In that vein, both Polymarket and Kalshi recently partnered with the NBA, to "become the NBA's preferred prediction market platforms and receive access to official league data and intellectual property rights to use marks and logos on their sites."[15] Polymarket and Kalshi are also partners with NHL, and Polymarket is a partner of the MLB and MLS.

98. Polymarket offers a range of categories in which users can place bets regarding sports, including game outcomes, futures, props, and off field occurrences.[16]

99. In a single 30-day period, ending on October 26, 2026, Polymarket saw $13.7 billion in activity on its platform, with sports representing 98.2% of that activity. That amounts to about $13.5 billion in sports bets. And it represents a 78% increase from the preceding 30-day window.[17]

100. Polymarket operates its online betting platform on its website at https://polymarket.us/ and through its mobile applications for Android and Apple iOS devices. The platform is readily accessible to Louisiana residents and does not restrict access based on location. Any Louisianian aged 18 or older can create an account, deposit funds, and place bets from anywhere in the State, regardless of whether that person is under the gambling age of 21, has self-excluded from participating in gambling, including sports wagering online, or is located in a "voted-in" parish for sports wagering.

101. Polymarket is not licensed as a sports wagering licensee in Louisiana, is not permitted as a sports wagering platform provider in Louisiana, does not abide by the same licensing, permitting, regulatory, compliance, and/or taxation as legal operators, does not provide the same consumer protections required of and offered by legal sportsbook operators in the State, and does not comply with Louisiana gaming laws.

102. The State has confirmed through public-protection investigations that Polymarket does offer, and continues to offer, sports wagering and other prohibited forms of gaming on its website and through its mobile applications in Tangipahoa Parish and has accepted bets from Louisiana citizens living in Tangipahoa Parish.

---

[15] David Purdum, *NBA partners with Kalshi and Polymarket amid regulation fight*, ESPN, perma.cc/E4KG-CHFQ (Oct. 26, 2026).
[16] *How Does Polymarket Work: A Beginner's Guide to Trading Sports on Polymarket*, *supra* n.14.
[17] *Polymarket US Generates $13.7 Billion in Sports Betting Turnover*, KuCoin, perma.cc/EM3X-UUG9 (Oct. 28, 2026).



Certified True and Correct Copy
CertID: 2026111300001

Tangipahoa Parish
Deputy Clerk Of Court

Generated Date:
11/13/2026 8:42 AM

Alteration and subsequent re-filing of this certified copy may violate La. R.S. 14:132, 133, and/or RPC Rule 3.3(a)(3).

103. Polymarket does not pay any taxes on its revenue derived from operating in Louisiana, let alone pay the required 21.5% gaming tax on its "net gaming proceeds from sports wagering offered to consumers within this state" as required by La. R.S. 27:625.

104. Recognizing that its activities likely constitute illegal gambling in the State of Louisiana, Polymarket sued the Attorney General and other state defendants in the Eastern District of Louisiana on October 27, 2026, seeking a declaratory judgment stating that Louisiana's enforcement of its gambling laws constitute violations of the supremacy clause and the commerce clause via the State's gambling laws. *QCX LLC v. Murrill, et al.*, No. 2:26-cv-2482 (EDLA).

105. In its lawsuit against the Attorney General and others, Polymarket effectively concedes it is operating in violation of Louisiana law by operating its online sports wagering platform, but Polymarket uses the term "event contracts" to avoid blatant admission of wrongdoing:

i. "It is a felony to operate an online sports wagering business in Louisiana except 'in compliance with' the Louisiana Sports Wagering Act." Complaint, ¶ 6 (citing La. R.S. 14:90.3(B), (E), (P) and La. R.S. 14:90(A)).

ii. "These actions demonstrate Defendants' willingness to use state law to shut down federally authorized markets[.]" *Id.* at ¶ 7.

iii. "Event contracts ... provide significant financial value" and "allow parties to mitigate risk[.]" *Id.* at ¶ 39.

iv. "Cutting off Louisianans from [Polymarket's] event contracts ... would deal a decisive blow to Polymarket US's goodwill and reputation within the State." *Id.* at ¶ 97.

**c. Robinhood**

106. Robinhood is a retail trading and brokerage platform founded by Baiju Bhatt and Vlad Tenev.[18]

[18] *Board of Directors*, Robinhood, perma.cc/96H3-MEHU (last visited Nov. 10, 2026).



Certified True and Correct Copy
CertID: 2026111300001

Tangipahoa Parish
Deputy Clerk Of Court

Generated Date:
11/13/2026 8:42 AM

Alteration and subsequent re-filing of this certified copy may violate La. R.S. 14:132, 133, and/or RPC Rule 3.3(a)(3).

****COMPLEX LITIGATION****

107. In March 2025, Robinhood launched a "Prediction Markets Hub" through which its customers trade event contracts, in partnership with Kalshi.[19] Robinhood holds its offerings out as available across the United States, including in Louisiana.

108. Robinhood offers betting on sports, elections, and a wide range of other outcomes through Robinhood Derivatives under its FCM license regulated by the CFTC, charging a commission for each contract traded.

109. Robinhood does not operate its own DCM for these contracts; instead, it routes its customers' wagers to one or more third-party DCMs, including KalshiEX, Interactive Brokers' ForecastEx, Rothera Exchange and Clearing LLC (operated through Robinhood's joint venture with Susquehanna International Group), and, beginning in September 2026 for a selection of football contracts, the CFTC-regulated exchange and clearinghouse operated by Crypto.com and OG.com (CDNA). Robinhood has stated that it would lose substantial business if it could not route its customers' wagers through Kalshi.[20]

110. On information and belief, KalshiEX supplies the vast majority of Robinhood's live sports contracts, while ForecastEx LLC provides political and macroeconomic contracts, and Robinhood serves as the retail distribution pipeline for these third-party exchanges.

111. Beginning on or about September 8, 2026, Robinhood began routing a selection of football event contracts to the CDNA/OG.com exchange and clearinghouse, and, on information and belief, Robinhood Markets holds or will hold an equity stake in the Crypto.com group's prediction-market business in connection with that arrangement.

112. By September 2025, revenue from Robinhood's offerings was estimated to be annualizing at over $200 million, with Robinhood users estimated to account for approximately 25% to 35% of Kalshi's daily trading volume.[21] Robinhood's prediction-market volumes have since grown substantially: On information and belief, approximately

---

[19] *Robinhood Launches Prediction Markets Hub*, Robinhood, perma.cc/LKZ9-VMNE (Mar. 17, 2025).
[20] Jonathan Stempel, *US appeals court blocks Kalshi from offering event contracts on Native American lands*, Yahoo! Finance, perma.cc/7U47-SDXN (Sept. 16, 2026).
[21] *Robinhood open to deals to grow prediction markets business, exec says*, KFGO, perma.cc/W2ZA-HGMR (Oct. 13, 2025).



Certified True and Correct Copy
CertID: 2026111300001

Tangipahoa Parish
Deputy Clerk Of Court

Generated Date:
11/13/2026 8:42 AM

Alteration and subsequent re-filing of this certified copy may violate La. R.S. 14:132, 133, and/or RPC Rule 3.3(a)(3).

13.6 billion event contracts were traded on Robinhood in the second quarter of 2026 alone,[22] including more than 5 billion contracts during the World Cup.

113. Robinhood's offerings available to Louisiana users include sports "event contracts" across the NFL, the NBA, and college football, and bets on the outcomes of Louisiana's own elections, including "LA-02 House winner," "LA-05 House winner," and "LA-06 House winner" contracts priced in cents on the "R. party" and "D. party" outcomes. Robinhood's platform expressly discloses that its "event contracts" are offered "through Robinhood Derivatives and its membership with the partnered exchanges regulated by the [CFTC]."[23]







[22] *Robinhood (HOOD) Grew Event Contracts Over 10x, Can Its Premium Absorb the Legal Risk?*, Yahoo! Finance, perma.cc/KYT6-VJWJ (Oct. 5, 2026).

[23] *Event Contracts Overview*, Robinhood, perma.cc/9MGJ-JE74 (last visited Nov. 10, 2026).



Certified True and Correct Copy
CertID: 2026111300001

Tangipahoa Parish
Deputy Clerk Of Court

Generated Date:
11/13/2026 8:42 AM

Alteration and subsequent re-filing of this certified copy may violate La. R.S. 14:132, 133, and/or RPC Rule 3.3(a)(3).

114. Robinhood operates its platform through its website https://robinhood.com/us/en/ and mobile applications, which are readily accessible to Louisiana residents and do not restrict access based on location. Any Louisianian aged 18 or older can create an account, deposit funds, and place bets from anywhere in the State, regardless of whether that person is under the legal gambling age of 21, has self-excluded from gambling, or is located in a "voted-in" parish for sports wagering.

115. Robinhood is not licensed as a sports wagering licensee and is not permitted as a sports wagering platform provider in Louisiana, does not provide the consumer protections required of legal sportsbook operators, does not comply with Louisiana gaming laws, and does not pay the 21.5% gaming tax required by La. R.S. 27:625.

116. The State has confirmed through public-protection investigations that Robinhood offers, and continues to offer, sports wagering and other prohibited forms of gaming on its website and through its mobile applications in Tangipahoa Parish.

**d. Crypto.com**

117. Crypto.com, founded in 2016, operates an online cryptocurrency exchange and offers a wide range of prediction-market "event contracts," including on sports, elections, financials, and culture. Those contracts are listed, cleared, and settled through CDNA (formerly Nadex).[24]

118. Crypto.com launched the spin-off OG.com, a standalone company that operates the OG.com Prediction Markets platform on the same CDNA exchange and clearinghouse.[25] OG.com serves as a prediction-market infrastructure and clearing provider for other operators. Federal regulators and courts have grouped Crypto.com, as a DCM, alongside Kalshi and Polymarket.

119. Like Polymarket, the Crypto.com platform uses cryptocurrency.

120. Crypto.com holds its event-contract offerings out as available across the United States.

---

[24] *See Crypto.com Becomes First Major Crypto Platform to Obtain a Full Stack of CFTC Derivatives Licenses*, crypto.com, perma.cc/D2YX-YWYU (Sept. 30, 2025).

[25] Tristan Greene, *Crypto.com Launches 'OG' Sports Predictions Market Offering Leveraged, Margin Trading*, Yahoo! Finance, perma.cc/ML4V-2CJZ (Feb. 3, 2026).



Certified True and Correct Copy
CertID: 2026111300001

Tangipahoa Parish
Deputy Clerk Of Court

Generated Date:
11/13/2026 8:42 AM

Alteration and subsequent re-filing of this certified copy may violate La. R.S. 14:132, 133, and/or RPC Rule 3.3(a)(3).

**COMPLEX LITIGATION**

121. Within the Crypto.com App's "Predictions" tab, Crypto.com offers Louisiana users betting on various sports events, including "NFL Champion 2026-2027," "NCAA Football National Champion 2026-27," and "NFL MVP 2026-27" markets and game-level markets extending to table tennis. Crypto.com also offers bets on "Politics," including the "US Presidential Election Winner 2028," "Alaska Senate Election Winner 2026," and "How many Senate seats will Democrats hold."[26]







122. Crypto.com operates its platform through its website https://crypto.com/us and mobile applications, which are readily accessible to Louisiana residents and do not restrict access based on location. Any Louisianian aged 18 or older can create an account, deposit funds, and place bets from anywhere in the State, regardless of whether that person is under

[26] *See* crypto.com, perma.cc/9J5J-Y24W (last visited Nov. 10, 2026).



Certified True and Correct Copy
CertID: 2026111300001
Tangipahoa Parish
Deputy Clerk Of Court
Generated Date:
11/13/2026 8:42 AM
Alteration and subsequent re-filing of this certified copy may violate La. R.S. 14:132, 133, and/or RPC Rule 3.3(a)(3).

the legal gambling age of 21, has self-excluded from gambling, or is located in a "voted-in" parish for sports wagering.

123. Crypto.com is not licensed as a sports wagering licensee and is not permitted as a sports wagering platform provider in Louisiana, does not provide the consumer protections required of legal sportsbook operators, does not comply with Louisiana gaming laws, and does not pay the 21.5% gaming tax required by La. R.S. 27:625.

**e. Coinbase**

124. Coinbase was founded by Brian Armstrong and Fred Ehrsam and operates a nationwide, online cryptocurrency platform.[27]

125. In mid-December 2025, Coinbase launched a CFTC-regulated prediction-markets offering through its subsidiary CFM, which operates as an FCM.[28] On information and belief, CFM acts as the regulated broker that offers "event contracts" and routes its customers' wagers directly onto the order book of KalshiEX, an independent, CFTC-regulated DCM that serves as Coinbase's execution venue, rather than matching them internally or on a Coinbase-operated exchange.[29]

126. Coinbase offers a wide range of event contracts, including on sports and elections, and operates its prediction markets in all 50 States.

127. Coinbase's Louisiana offerings are, like others, pointedly local. Through the Coinbase platform, users can bet on the "Louisiana vs Louisiana-Monroe" college-football game; the "Louisiana 06 House General Election: voter turnout Above 200K"; and "Will Louisiana oil & gas extraction jobs rise YoY?" Coinbase also offers national sports bets (*e.g.*, "2027 Pro Football Champion," "NFC North Division Winner") and "Elections" bets, such as who will win the 2028 U.S. Presidential Election (reflecting over $283 million in volume) and various U.S. Senate races.

---

[27] *About Coinbase*, Coinbase, perma.cc/PM6W-8XXS (last visited Nov. 10, 2026).

[28] *See Coinbase Brings Global Crypto Derivatives to US Market*, Coinbase, https://www.coinbase.com/blog/coinbase-brings-global-crypto-derivatives-to-us-market (May 29, 2026).

[29] *See Coinbase Prediction Markets Review 2026: Fees, Safety and Alternatives*, macro.markets, perma.cc/B38J-PB8P (last updated Oct. 27, 2026).



Certified True and Correct Copy
CertID: 2026111300001

Tangipahoa Parish
Deputy Clerk Of Court

Generated Date:
11/13/2026 8:42 AM

Alteration and subsequent re-filing of this certified copy may violate La. R.S. 14:132, 133, and/or RPC Rule 3.3(a)(3).










128. Coinbase users fund these wagers with cash or USDC held in their existing Coinbase accounts, and access the markets through Coinbase's partnership with Kalshi.

129. Coinbase operates its platform through its website https://www.coinbase.com/ and mobile applications, which are readily accessible to Louisiana residents and do not restrict access based on location. Any Louisianian aged 18 or older can create an account, deposit



Certified True and Correct Copy
CertID: 2026111300001

Tangipahoa Parish
Deputy Clerk Of Court

Generated Date:
11/13/2026 8:42 AM

Alteration and subsequent re-filing of this certified copy may violate La. R.S. 14:132, 133, and/or RPC Rule 3.3(a)(3).

funds, and place bets from anywhere in the State, regardless of whether that person is under the legal gambling age of 21, has self-excluded from gambling, or is located in a "voted-in" parish for sports wagering.

130. Coinbase is not licensed as a sports wagering licensee and is not permitted as a sports wagering platform provider in Louisiana, does not provide the consumer protections required of legal sportsbook operators, does not comply with Louisiana gaming laws, and does not pay the 21.5% gaming tax required by La. R.S. 27:625.

**f. Novig**

131. Novig, founded by Jacob Fortinsky and Kelechi Ukah,[30] operates a nationwide, online, vertically integrated, sports prediction-market exchange on its own CFTC DCM, Ludlow Exchange, LLC.[31]

132. Unlike many of its competitors, Novig focuses exclusively on sports prediction markets. Its trades are structured as standard binary event contracts, including moneylines, spreads, totals, and player props, that trade dynamically between $0.01 and $0.99 based on user demand, with winning contracts settling at exactly $1.00.

133. Novig allegedly matches users against other users rather than against a traditional sportsbook "house," a structure it markets as a "no-vig" model, but, as set forth below, describing its conduct as peer-to-peer "exchange wagering" is likely inaccurate and, regardless, does not make its conduct lawful in Louisiana.[32]

134. Novig's sports wagers made available to Louisiana users include a "Super Bowl" winner market (reflecting more than $1,000,000 in trading volume); NBA games (*e.g.*, "Pelicans at Warriors"); NHL and college games; and "Protected Markets ... live for Pro FB Player Props."

[30] *Novig: America's #1 Sports Trading App*, Y Combinator, perma.cc/ADB5-5E54 (last visited Nov. 10, 2026).

[31] *See Novig Launches Nationwide, Bringing the Leading Sports Prediction Market to Fans Across the Country*, Novig, perma.cc/3H4M-LHMT (Aug. 4, 2026).

[32] Jacob Fortinsky, *Jacob Fortinsky Tackles Your FAQs on Novig's Model*, Novig, perma.cc/PD2Y-R6R6 (Aug. 14, 2024).



Certified True and Correct Copy
CertID: 2026111300001

Tangipahoa Parish
Deputy Clerk Of Court

Generated Date:
11/13/2026 8:42 AM

Alteration and subsequent re-filing of this certified copy may violate La. R.S. 14:132, 133, and/or RPC Rule 3.3(a)(3).







135. On information and belief, Novig is available nationwide except in Arizona, Nevada, Michigan, and Ohio.[33]

136. Novig operates its platform through its website https://novig.com/ and mobile applications, which are readily accessible to Louisiana residents and do not restrict access based on location. Any Louisianian aged 18 or older can create an account, deposit funds, and place bets from anywhere in the State, regardless of whether that person is under the legal gambling age of 21, has self-excluded from gambling, or is located in a "voted-in" parish for sports wagering.

137. Novig is not licensed as a sports wagering licensee and is not permitted as a sports wagering platform provider in Louisiana, does not provide the consumer protections

[33] *Id.*



Certified True and Correct Copy
CertID: 2026111300001
Tangipahoa Parish
Deputy Clerk Of Court
Generated Date:
11/13/2026 8:42 AM
Alteration and subsequent re-filing of this certified copy may violate La. R.S. 14:132, 133, and/or RPC Rule 3.3(a)(3).

required of legal sportsbook operators, does not comply with Louisiana gaming laws, and does not pay the 21.5% gaming tax required by La. R.S. 27:625.

138. The State has confirmed through public-protection investigations that Novig offers, and continues to offer, sports wagering and other prohibited forms of gaming on its website and through its mobile applications in Tangipahoa Parish and has accepted bets from Louisiana citizens living in Tangipahoa Parish.

**g. Underdog**

139. Underdog operates a nationwide, online daily-fantasy-sports and prediction-market platform and was a founding member of a national alliance of prediction-market operators.[34]

140. On information and belief, Underdog offers sports event contracts to users, including in Louisiana, embedded in the core Underdog app alongside its daily-fantasy-sports games.




141. On information and belief, Underdog acquired Aristotle Exchange in early 2026—now Underdog Exchange DCM, Inc.—and offers its "event contracts" on its own CFTC-licensed DCM and DCO, with UDM, LLC (d/b/a Underdog Predict) acting as the FCM that routes customer wagers onto that exchange. On information and belief, Underdog was also the subject of a 2026 acquisition agreement by IG Group Holdings PLC.[35]

---

[34] *Underdog Launches Prediction Markets on its own Exchange*, Underdog, perma.cc/35CX-2HDV (July 18, 2026).

[35] *See IG Group to Acquire Underdog in $1.1B U.S. Prediction Markets Push*, Yahoo! Finance, perma.cc/W66P-CJ4H (July 30, 2026).



Certified True and Correct Copy
CertID: 2026111300001

Tangipahoa Parish
Deputy Clerk Of Court

Generated Date:
11/13/2026 8:42 AM

Alteration and subsequent re-filing of this certified copy may violate La. R.S. 14:132, 133, and/or RPC Rule 3.3(a)(3).

****COMPLEX LITIGATION****

142. Through its "Underdog Predict" system, Underdog allows Louisiana users to bet on various sports-related events, including New Orleans Saints player-prop contracts (*e.g.*, passing yards, passing touchdowns, receiving yards, and "Anytime TD" markets on Saints players in a New Orleans–Carolina matchup) and various team "to win" bets across the NFL, NBA, and college sports.







143. Underdog operates its platform through its website https://www.underdogsports.com/ and mobile applications, which are readily accessible to Louisiana residents and do not restrict access based on location. Any Louisianian aged 18 or older can create an account, deposit funds, and place bets from anywhere in the State, regardless of whether that person is under the legal gambling age of 21, has self-excluded from gambling, or is located in a "voted-in" parish for sports wagering.



Certified True and Correct Copy
CertID: 2026111300001

Tangipahoa Parish
Deputy Clerk Of Court

Generated Date:
11/13/2026 8:42 AM

Alteration and subsequent re-filing of this certified copy may violate La. R.S. 14:132, 133, and/or RPC Rule 3.3(a)(3).

144. Underdog is not licensed as a sports wagering licensee and is not permitted as a sports wagering platform provider in Louisiana, does not provide the consumer protections required of legal sportsbook operators, does not comply with Louisiana gaming laws, and does not pay the 21.5% gaming tax required by La. R.S. 27:625.

145. On information and belief, Underdog lists Louisiana as eligible for its "Prediction Picks," even where its daily-fantasy "Pick'em" and "Drafts" products are treated as ineligible there, underscoring that the prediction-market contracts are a distinct, unlicensed sports-wagering product offered to Louisianans.




### h. Gemini

146. Gemini operates an online cryptocurrency platform. In December 2025, Gemini launched "Gemini Predictions," a CFTC-regulated prediction-markets platform. Three Gemini entities cooperate to structure and offer its event contracts: Gemini Space Station, Inc. developed the proprietary derivatives technology and provides the retail interface; Gemini Titan, LLC serves as the trading venue and holds the CFTC DCM license; and Gemini Olympus, LLC serves as the clearinghouse and holds the CFTC DCO license that manages clearing, margin, and settlement.[36]

147. Gemini Predictions enables users to wager on outcomes including sports, elections, and cultural events, and Gemini operates the platform in all 50 States.[37]

148. Gemini's offerings to Louisiana users include bets on the "2027 Pro Football Champion," the "Presidential Election Winner 2028," and the "Bitcoin price at end of

---

[36] *See* Patrick Camuso, *Gemini Predictions: Taxes, IRS Reporting & Records*, Camuso CPA, perma.cc/8QSW-VDPZ (Nov. 6, 2026).

[37] Parth Dubey, *Gemini Launches Predictions Market Across 50 US States, Days After CFTC Licensing*, Yahoo! Finance, perma.cc/JL47-W9MD (Dec. 16, 2025).



Certified True and Correct Copy
CertID: 2026111300001
Tangipahoa Parish
Deputy Clerk Of Court
Generated Date:
11/13/2026 8:42 AM
Alteration and subsequent re-filing of this certified copy may violate La. R.S. 14:132, 133, and/or RPC Rule 3.3(a)(3).

November." Gemini also invites users to "+ Create Combo"—a "parlay" for a larger payout.




149. Gemini operates its platform through its website https://www.gemini.com/ and mobile applications, which are readily accessible to Louisiana residents and do not restrict access based on location. Any Louisianian aged 18 or older can create an account, deposit funds, and place bets from anywhere in the State, regardless of whether that person is under the legal gambling age of 21, has self-excluded from gambling, or is located in a "voted-in" parish for sports wagering.

150. Gemini is not licensed as a sports wagering licensee and is not permitted as a sports wagering platform provider in Louisiana, does not provide the consumer protections required of legal sportsbook operators, does not comply with Louisiana gaming laws, and does not pay the 21.5% gaming tax required by La. R.S. 27:625.

**i. ProphetX**

151. ProphetX, originally founded in 2018 as Prophet Exchange, now operates a nationwide, online prediction-market exchange.[38] ProphetX secured dual CFTC approval on or about June 11, 2026 as both a DCM and a DCO.[39]

---

[38] Andrew Gitto, *Guide to ProphetX: How Prediction Markets Work, What to Know About Contracts and Pricing for Patriots, Celtics, More*, NESN, perma.cc/6BT7-JUU3 (Nov. 3, 2026).

[39] *ProphetX Obtains CFTC Approval to Operate America's First Federally Regulated Sports-Native Exchange*, Yahoo! Finance, perma.cc/ZS9R-3KES (June 11, 2026).



Certified True and Correct Copy
CertID: 2026111300001
Tangipahoa Parish
Deputy Clerk Of Court
Generated Date:
11/13/2026 8:42 AM
Alteration and subsequent re-filing of this certified copy may violate La. R.S. 14:132, 133, and/or RPC Rule 3.3(a)(3).

152. Unlike platforms that route orders to a separate exchange, ProphetX is vertically integrated: Under its own DCM and DCO licenses, it operates the order books and directly clears and settles its users' bets, performing the exchange, clearing, and order-intake functions itself. ProphetX allegedly functions as an order-book exchange on which users trade directly against other users rather than against a sportsbook "house." But, as explained more fully below, describing its conduct as "peer-to-peer" is likely inaccurate and does not make its activities lawful in Louisiana.

153. ProphetX brands itself "America's First Sports-Native Prediction Market." ProphetX is currently available in 40 U.S. States.[40]

154. ProphetX launched as a sports-native exchange, focusing on the NFL, NBA, college football, and player props.[41] However, on or about September 2, 2026, ProphetX launched self-certified political event contracts, and, in October 2026, expanded its election offerings in the run-up to the November 3, 2026 midterm elections, growing from approximately seven to nineteen election markets, including eleven U.S. Senate races, six gubernatorial contests, the Los Angeles mayoral election, and a wager on who will control Congress.[42]

155. ProphetX offers Louisiana users bets within the NFL (a "Super Bowl LXI Winner" market and other "NFL Futures"), NBA, college football and basketball, NHL, and UFC, offered in classic sports-wagering formats of "Spread," "Total," and "Moneyline," together with parlay-style "same moment, bigger payout" combinations.

156. On information and belief, ProphetX now also offers election and political contracts to Louisiana users, including U.S. Senate, gubernatorial, Los Angeles mayoral, and control-of-Congress bets, and has extended its parlay functionality to those political bets, too.

---

[40] Mike Goodpaster, *Prophet X Exchange 2026: Complete Trading Guide & Features*, The Grueling Truth, perma.cc/3SXJ-VJNH (last updated Nov. 2, 2026).

[41] *ProphetX Launches Nationwide*, PR Newswire, perma.cc/U9DK-899A (June 18, 2026).

[42] Mike Breen, *ProphetX adds Senate, governor races as midterms near*, NEXT Predict, perma.cc/ZLT3-XSYW (Oct. 15, 2026).



Certified True and Correct Copy
CertID: 2026111300001

Tangipahoa Parish
Deputy Clerk Of Court

Generated Date:
11/13/2026 8:42 AM

Alteration and subsequent re-filing of this certified copy may violate La. R.S. 14:132, 133, and/or RPC Rule 3.3(a)(3).







157. ProphetX uses a standard "yes/no" binary format trading between $0.01 and $0.99, based on supply and demand, with winning bets resolving to $1.00 and losing bets to $0.00. ProphetX charges approximately 2% commission on net winnings.[43]

158. ProphetX operates its platform through its website https://www.prophetx.co/ and mobile applications. ProphetX actively accepts traders physically located in Louisiana and, on information and belief, operates in 49 states (with Nevada the only exception), requiring mandatory identity verification (a government-issued ID and a verification selfie). ProphetX permits users 18 years of age or older, below Louisiana's legal gambling age of 21, to open an account and make wagers, including on its sports and election contracts.

---

[43] *ProphetX Review (2026): CFTC-Regulated Sports Prediction Market*, ROLR, perma.cc/8S48-RXL6 (last visited Nov. 10, 2026).



Certified True and Correct Copy
CertID: 2026111300001

Tangipahoa Parish
Deputy Clerk Of Court

Generated Date:
11/13/2026 8:42 AM

Alteration and subsequent re-filing of this certified copy may violate La. R.S. 14:132, 133, and/or RPC Rule 3.3(a)(3).

159. ProphetX is not licensed as a sports wagering licensee and is not permitted as a sports wagering platform provider in Louisiana, does not provide the consumer protections required of legal sportsbook operators, does not comply with Louisiana gaming laws, and does not pay the 21.5% gaming tax required by La. R.S. 27:625.

**j. Defendants' Sporting "Event Contracts" Constitute Sports Wagering Under Louisiana Law.**

160. Defendants deceitfully describe their services as "event contracts" in an attempt to circumvent States' definitions of "gambling" or "sports wagering." Defendants cannot continue to illegally profit in Louisiana, nor continue to harm Louisiana consumers, by attempting to reclassify or redefine their products and offerings as "event contracts," "swaps," or any other misnomer under the guise of federal regulation instead of what they truly are: gambling.

161. "Event contracts" are investment instruments that ensure payment to a contract holder if a particular event happens, and they have existed in the United States since the nineteenth century.[44] These contracts were originally developed by commodity traders as a straightforward way of hedging their investments in raw materials, like timber and grain. By purchasing an event contract for an adverse event, like a flood or fire during the harvest season, commodity traders could offset the losses from that year's poor yield.

162. Defendants, however, have supposedly repurposed the event contract to allow consumers to wager on the outcomes of a wide range of real-world and imminent (or already ongoing) events, such as what movie will win the Oscar for Best Picture this year, what President Trump will say during his next news conference, and what team will win the College Football Sun Belt Championship.

163. Event contracts are structured as binary options: Bettors buy "yes" or "no" positions on whether an event will occur ("yes") or will not occur ("no"). This probability is expressed as a percentage, ranging from 0% (certain to not happen) to 100% (certain to

[44] Peter Gratton, *Event Contracts: What They Are and How They Are Used*, Investopedia, perma.cc/5J2Z-437M (last updated Oct. 1, 2026).



Certified True and Correct Copy
CertID: 2026111300001

Tangipahoa Parish
Deputy Clerk Of Court

Generated Date:
11/13/2026 8:42 AM

Alteration and subsequent re-filing of this certified copy may violate La. R.S. 14:132, 133, and/or RPC Rule 3.3(a)(3).

****COMPLEX LITIGATION****

happen). This percentage corresponds to a monetary value, as the combined investment of "yes" and "no" users must equal $1.00.[45]

164. Take Kalshi. The price of an individual bet on Kalshi fluctuates between $0.01 and $0.99 per bet, exclusive of any transaction fees. The individual bet price is determined by the volume of "yes" and "no" bets on an underlying question. As more "yes" bets get placed compared to "no" bets for a question, the price of a "yes" bet goes up and the price of a "no" bet goes down. If the price of a bet changes before the underlying question resolves, bettors can "sell" their bets at the updated price. Once the question is resolved, winning bettors receive $1 and losing bettors receive $0.[46]

165. Kalshi describes its services as matching bettors on opposite sides of a particular wager. For example, if Kalshi offers a bet asking, "Will the New Orleans Saints win their game on Friday?", a user might want to bet "yes" at 0.65 cents, expecting the Saints to win. To complete the wager, another Kalshi user must take the opposite side of this bet. If the Saints win, the first user receives the full $1.00 payout, and the second user receives nothing. Regardless of the outcome, Kalshi takes its transaction fees from both users. Kalshi has asserted that set-up makes it a peer-to-peer market and not a "house," to attempt to justify that it is not engaging in gambling.

166. Describing their conduct as "peer-to-peer" does not make Defendants' activities legal in Louisiana. Per Louisiana law, taking a "rake" or being "the house" is not a requirement of gambling. Gambling occurs when anyone "conduct[s] ... or ... assist[s] in the conducting, as a business ... a contrivance whereby a person risks the loss of anything of value in order to realize a profit." La. R.S. 14:90(A)(1)(a).

167. Per the Louisiana Sports Wagering Act, a "sports wager" or "sports bet" means "money or ... value risked by a player on an occurrence associated with a sports event for which the outcome is uncertain." La. R.S. 27:602(23). The term includes several types of bets, such as parlay bets, over/under bets, proposition bets (all of which are offered by

---

[45] *How are prices determined?*, Kalshi, perma.cc/SCK4-57KU (Mar. 10, 2026).
[46] *Id.*



Certified True and Correct Copy
CertID: 2026111300001

Tangipahoa Parish
Deputy Clerk Of Court

Generated Date:
11/13/2026 8:42 AM

Alteration and subsequent re-filing of this certified copy may violate La. R.S. 14:132, 133, and/or RPC Rule 3.3(a)(3).

Defendants), as well as "exchange wagering." *Id.* Exchange wagering is also known as a peer-to-peer or a betting exchange.

168. In order to ensure a sufficient volume of betting activity on both sides of a bet, Kalshi, for example, uses so-called "market makers," including Kalshi Trading, to place bets. Individual Kalshi users never know whether they are betting against other bettors or against a market maker like Kalshi Trading. In this way, Kalshi Trading acts as the house of a gambling operation by buying (often at discounted prices) and selling bets so that Louisiana consumers can bet at any given time, without waiting for another consumer to take the other side of the bet.

169. Defendants operate these platforms as businesses and profit from the buying, selling, and placing of these bets.[47] They do so without a license or permit, profiting on every bet; their trading companies and brokers act as the house and profit through buying and selling the bets; and Kalshi Klear and QC Clearing and other DCOs in particular determine outcomes, issue payouts, and process the movement of funds for bettors after an event. Defendants thus control every aspect of the wager, just like a casino or sportsbook.

170. Studies and data show small retail consumers (like Louisianans) are actually competing against Wall Street firms, Kalshi Trading, and other institutional firms. On information and belief, Kalshi Trading and other "highly advanced trading institutions" purchase massive orders in order to provide liquidity, acting as the house, with the retail consumer oftentimes in the dark that this is even happening.[48] Plus, "prediction market makers also make money by taking an affirmative position in certain markets and actively trading against counterparties, behavior that is more commonly found among casino bookies than traditional market markers."[49] Defendants like Kalshi provide discounts,

---

[47] *See Tunica-Biloxi Launches First Tribal Prediction Market App*, Kalshi News, perma.cc/PZD9-GWHC (Sept. 18, 2026); *Tradeweb and Kalshi Announce Strategic Partnership to Expand Institutional Access to Prediction Markets*, Tradeweb, perma.cc/CPZ6-PFML (Feb. 19, 2026); Landon Manning, *DraftKings Partners with Polymarket to Offer Prediction Markets*, Be (in) Crypto, https://beincrypto.com/draftkings-prediction-market-polymarket-impact/ (Oct. 22, 2025).

[48] Eleanor Davis-Drier, *The House Always Wins, Even on House-less Kalshi*, The American Prospect, perma.cc/6JWR-P2LY (Aug. 26, 2026).

[49] *Id.*



Certified True and Correct Copy
CertID: 2026111300001

Tangipahoa Parish
Deputy Clerk Of Court

Generated Date:
11/13/2026 8:42 AM

Alteration and subsequent re-filing of this certified copy may violate La. R.S. 14:132, 133, and/or RPC Rule 3.3(a)(3).

rebates, revenue share, and other monetary benefits to those entities at a fraction of the cost to Louisianans.

171. The resemblance to traditional gambling doesn't stop there. Defendants employ a wide variety of classic sports-betting devices, including moneylines, spreads, point totals, parlays, and prop bets. These offerings do not exist independent of the sports betting industry and relate to nothing except ways to gamble on sports. Indeed, they fall within the explicit definition of a "sports wager" or "sports bet" under Louisiana law. *See* La. R.S. 27:602(A)(23).

172. As one example, Kalshi permitted Louisiana residents to bet on many aspects of the LSU-Alabama college football game. This is illegal sports wagering according to Louisiana law, not a financial instrument or investment tool:[50]




[50] *Alabama vs LSU*, Kalshi, https://kalshi.com/markets/kxncaafgame/college-football-game/kxncaafgame-26nov07alalsu (last visited Nov. 5, 2026).



Certified True and Correct Copy
CertID: 2026111300001

Tangipahoa Parish
Deputy Clerk Of Court

Generated Date:
11/13/2026 8:42 AM

Alteration and subsequent re-filing of this certified copy may violate La. R.S. 14:132, 133, and/or RPC Rule 3.3(a)(3).

**COMPLEX LITIGATION**

Kalshi MARKETS INVEST LIVE 410 PRO MORE Trade on anythi

Trending Midterms Elections Politics Sports Culture Crypto Commodities Climate Economics Me

Alabama vs LSU — Live chat

Game Lines | Team Props | Game Props

**Spread**

1st Half | 1st Quarter | 2nd Half | 2nd Quarter | 3rd Quarter | 4th Quarter

| | | | |
|---|---|---|---|
| LSU wins by over 23.5 points | 11% | Yes 20¢ | No 98¢ |
| LSU wins by over 20.5 points | 13% | Yes 23¢ | No 97¢ |
| LSU wins by over 17.5 points | 16% | Yes 29¢ | No 97¢ |

Show more

Point Total

Moneyline

Team Total

Overtime

## Alabama vs. LSU Odds

Kalshi gives LSU a 68% chance to beat Alabama on Saturday, Nov. 7, at 3:30 p.m. ET. The spread market puts LSU's winning margin at about 6.5 points. The total market puts the combined score at about 53.5 points. Updated today at 2:26 AM ET.

ALABAMA VS. LSU TEAM FORM

**No. 9 Alabama**: 6-2 (4-2 in conference). Last five: W 31-20 vs. Texas A&M, L 10-26 at Tennessee, L 17-20 vs. Georgia, W 56-23 at Mississippi State, W 49-18 vs. South Carolina.

**No. 15 LSU**: 6-2 (3-2 in conference). Last five: W 38-17 at Auburn, W 31-0 vs. Mississippi State, L 34-35 at Kentucky, W 63-14 vs. McNeese, W 35-6 vs. Texas A&M.



Certified True and Correct Copy
CertID: 2026111300001

Tangipahoa Parish
Deputy Clerk Of Court

Generated Date:
11/13/2026 8:42 AM

Alteration and subsequent re-filing of this certified copy may violate La. R.S. 14:132, 133, and/or RPC Rule 3.3(a)(3).

**COMPLEX LITIGATION**




173. Similarly, Polymarket permitted Louisiana residents to bet on many aspects of the LSU-Alabama college football game. This constitutes illegal sports wagering according to Louisiana law, not a financial instrument or investment tool:[51]




[51] *Alabama vs. LSU*, Polymarket, perma.cc/AZ59-FPFD (last visited Nov. 5, 2026).



Certified True and Correct Copy
CertID: 2026111300001
Tangipahoa Parish
Deputy Clerk Of Court
Generated Date:
11/13/2026 8:42 AM
Alteration and subsequent re-filing of this certified copy may violate La. R.S. 14:132, 133, and/or RPC Rule 3.3(a)(3).

****COMPLEX LITIGATION****

174. For its part, Kalshi has also runs ads explicitly calling sports "event contracts" purchased on their platforms "bets" and stating that its platform offers a "legal" way to "bet" on sports in all 50 States:[52][53]







175. Defendants offer several leagues, events, categories, and other offerings that, aside from the fact they are not licensed or permitted to do so, are illegal under Louisiana law and per the Board through its Sports Wagering Catalog.[54]

176. Parlays are a prime example.[55] Despite the longer odds of winning and the more complicated calculation for odds of success, "America is obsessed with parlays."[56] To capitalize on the popularity of sports parlays, Defendants offer "combos" that "allow users to trade custom combinations of events."[57] While the combos come with higher payouts if all outcomes are correct, the bettor loses everything if any outcome is wrong. When launched, industry experts swiftly equated Defendants' combos with sports book parlays.[58]

---

[52] Dustin Gouker, *Kalshi Is Advertising That 'Sports Betting' Is Legal In California, Texas*, The Event Horizon, perma.cc/898U-G657 (Sept. 17, 2025).

[53] Jule Pattison-Gordon, *States' Uprising Against Prediction Markets*, Governing, perma.cc/6268-EN7D (Sept. 17, 2026).

[54] *See Sports Wagering Catalog*, Louisiana Gaming Control Board, perma.cc/9MWA-XMTK (last visited Nov. 5, 2026)

[55] A wager on the outcome of a parlay is not a "swap" as defined in 7 U.S.C. § 1a(47)(A)(ii).

[56] Emily Giambalvo, Kati Perry, and Aaron Steckelberg, *Americans Can't Stop Betting Parlays. Sportsbooks are Cashing In*, The Washington Post, https://www.washingtonpost.com/sports/interactive/2025/parlay-popularity-odds-sportsbooks/?itid=sr_0_73aac7bf-f36c-4046-9eec-663be16f2d43 (Oct. 9, 2025).

[57] Combos, *Kalshi*, perma.cc/RQ9U-6SWU (last updated Oct. 2026).

[58] Ryan Butler, *Kalshi's Combo Event Contracts Raise Prediction Market Stakes*, Yahoo! Finance, perma.cc/A4B4-NXX6 (Dec. 16, 2025).



Certified True and Correct Copy
CertID: 2026111300001
Tangipahoa Parish
Deputy Clerk Of Court
Generated Date:
11/13/2026 8:42 AM
Alteration and subsequent re-filing of this certified copy may violate La. R.S. 14:132, 133, and/or RPC Rule 3.3(a)(3).

177. Defendants also offer proposition bets, which are wagers placed on specific occurrences within a game (such as individual player statistics), not just the final score or outcome.[59] In fact, some, if not all, Defendants offer proposition bets on individuals participating in college sporting events, which is specifically prohibited in Louisiana.[60]

178. On Kalshi's website, for example, users can bet on the SEC Rushing Yards Leader:[61]




179. On Polymarket's website, users can bet on, for example, the Regular Season Passing TDS Leader:[62]

---

[59] A wager on the outcome of a proposition bet is not a "swap" as defined in 7 U.S.C. § 1a(47)(A)(ii).

[60] *See Sports Wagering Catalog*, *supra* n.54, at Rejected and Unapproved Leagues, Events, Categories, and Types.

[61] *SEC: Rushing Yards Leader*, Kalshi, https://kalshi.com/markets/kxncaafsecleader/college-football-sec-stats-leaders/kxncaafsecleader-26rshyds (last visited Nov. 5, 2026).

[62] *FBS Regular Season Passing TDS Leader*, Polymarket, perma.cc/J7SB-9Y67 (last visited Nov. 5, 2026).



Certified True and Correct Copy
CertID: 2026111300001

Tangipahoa Parish
Deputy Clerk Of Court

Generated Date:
11/13/2026 8:42 AM

Alteration and subsequent re-filing of this certified copy may violate La. R.S. 14:132, 133, and/or RPC Rule 3.3(a)(3).

****COMPLEX LITIGATION****




180. It is clear that the Defendants' platforms allow a "wager" or "bet" of "a sum of money or representation of value risked by a player on an occurrence associated with a sports event for which the outcome is uncertain," which is the definition of a sports wager in La. R.S. 27:602(A)(23).[63]

181. The Board, as the sole regulator with exclusive jurisdiction and regulatory authority over sports wagering, is the only regulator that has any authority or right to dictate what leagues, events, categories, and types of sports wagers are permissible in Louisiana. La. R.S. 27:1 and 601 *et seq*.

182. In a 2024 legal brief, Kalshi conceded that an event contract "contingent on a game or a game-related event—like the Kentucky Derby, Super Bowl, or Masters golf tournament" constituted a contract involving "gaming" (read: gambling).[64] It went on to

---

[63] Likewise, Defendants' offerings have no value as a hedging instrument and are not intended to be hedging instruments, except insofar as a Louisiana user is hedging potential sports gambling losses.

[64] Brief of Petition KalshiEx LLC at 17, *KalshiEX LLC v. Commodity Futures Trading Comm'n*, 119 F.4th 58 (D.C. Cir. 2024) (No. 24-5205).



Certified True and Correct Copy
CertID: 2026111300001

Tangipahoa Parish
Deputy Clerk Of Court

Generated Date:
11/13/2026 8:42 AM

Alteration and subsequent re-filing of this certified copy may violate La. R.S. 14:132, 133, and/or RPC Rule 3.3(a)(3).

acknowledge that such sports betting was "unlikely to serve any 'commercial or hedging interest.'"[65][66]

183. Louisiana is not the first State to recognize that Defendants' sports "event contracts" are unlicensed sports wagering. Gaming regulators across the country have issued cease-and-desist letters to one or more Defendants, including in Nevada, Illinois, Montana, Arizona, Connecticut, Maryland, Ohio, and New Jersey between March 2025 and January 2026. The Maryland Lottery and Gaming Control Commission, for example, concluded that purchasing Kalshi's sports-related contracts is "indistinguishable" from the act of placing a sports wager,[67] and the Ohio Casino Control Commission concluded that Kalshi was operating online sports gaming without the license Ohio law requires.[68] On September 18, 2026, the Missouri Attorney General sent cease-and-desist letters to six of the operators named in this Petition—Polymarket, Kalshi, Crypto.com, Novig, Underdog, and Robinhood—asserting that they facilitate unlicensed sports wagering by offering sports-related "event contracts."[69]

184. Several States have filed suit against named Defendants and others over illegal gambling operations. The Connecticut, Massachusetts, Michigan, and New York Attorneys General, for example, have each sued one or more of these operators for offering unlicensed sports wagering.

185. And States have been largely successful in those suits: Michigan secured a June 2026 temporary restraining order and, on September 2, 2026, a preliminary injunction requiring Kalshi to geofence Michigan residents out of its sports-related event contracts, subject to a $500,000-per-day penalty. A Nevada court likewise entered a preliminary

[65] *Id.*

[66] Despite attempting to distance itself from online gambling when legally convenient, Kalshi has separately acknowledged that it is in direct competition with online sports books like DraftKings and FanDuel, and promoted its business as a "disrupter" of online sports books' businesses. CNBC Television, *Kalshi CEO Tarek Mansour on NHL partnership: A seminal moment for prediction markets*, YouTube, perma.cc/KQL5-SXW3 (Oct. 22, 2025).

[67] Ian Round, *Crypto.com and Kalshi sue MD over sports betting cease-and-desist order*, The Daily Record, perma.cc/EV3S-RFUG (Apr. 23, 2025).

[68] *See Cease-and-Desist: Event Contracts on Sporting Events Violate Ohio Sports Gaming Laws*, Ohio Gaming Control Commission, perma.cc/D7VE-PSBT (Mar. 31, 2025).

[69] *Missouri Attorney General Hanaway Orders Unlicensed Prediction Markets To Cease And Desist Unlawful Sports Wagering*, Missouri Attorney General, perma.cc/4BXC-73WX (Sept. 18, 2026).



Certified True and Correct Copy
CertID: 2026111300001

Tangipahoa Parish
Deputy Clerk Of Court

Generated Date:
11/13/2026 8:42 AM

Alteration and subsequent re-filing of this certified copy may violate La. R.S. 14:132, 133, and/or RPC Rule 3.3(a)(3).

injunction against Kalshi, Polymarket, and Coinbase, describing sports betting and sports-contract trading as "indistinguishable."

186. Federal appellate courts have also rejected Defendants' federal-preemption defenses, holding these sports "event contracts" are not "swaps" subject to the CFTC's exclusive jurisdiction. In *KalshiEX, LLC v. Assad*, 190 F.4th 1098 (9th Cir. 2026), the Ninth Circuit held that "[t]he substance of the sports event contracts offered on Kalshi's DCM is sports gambling, regardless of whether Kalshi calls them swaps," reasoning that such contracts "do not help institutions or investors hedge against risk; they *create* risk, largely for ordinary consumers," and that "placing sports bets, even when called by another name, is still gambling." *Id.* at 1113–14. The Sixth Circuit reached the same conclusion in affirming a ruling for Ohio regulators on September 25, 2026. As a district court put it, Kalshi's sports-related event contracts "are sports wagers and everyone who sees them knows it." *KalshiEX, LLC v. Hendrick*, 817 F. Supp. 3d 1014, 1029 (D. Nev. 2025), *aff'd sub nom. KalshiEX, LLC v. Assad*, 190 F.4th 1098 (9th Cir. 2026).

187. In short, as States and courts across the country have recognized, Defendants' multitude of sports-betting offerings are classic "sports wagers" because their users risk a sum of money (i.e. the price of the contract) on a sporting event for which the outcome is uncertain (i.e. the position taken on the event contract). *See* La. R.S. 27:602(A)(23).

188. Accordingly, Defendants' sports "events contracts" are wagers on uncertain sporting event outcomes, structured and operated in a manner that meets the legal definition of sports wagering under Louisiana law.

**C. Defendants' Unlawful Behavior Poses Serious Harm to Louisiana, Louisiana Lawful Gaming, and Louisiana Citizens.**

189. Every day that Defendants operate their platforms unlawfully in Louisiana, the State and its citizens face real, cognizable harms.

190. The American Gaming Association operates a ticker that counts the "State Tax Dollars Lost Since 'Prediction Markets' Began Offering Back Door Sports Betting." As of



Certified True and Correct Copy
CertID: 2026111300001

Tangipahoa Parish
Deputy Clerk Of Court

Generated Date:
11/13/2026 8:42 AM

Alteration and subsequent re-filing of this certified copy may violate La. R.S. 14:132, 133, and/or RPC Rule 3.3(a)(3).

November 5, 2026, at 3:35 a.m. central time, the amount was over $1.629 billion—and steadily rising:[70]




191. As a large business sphere contributing over a billion dollars to Louisiana in revenue, legalized gaming in Louisiana benefits the State and its citizens through large-scale economic development and jobs.[71] Illegal gambling operations, then, negatively affect the positive economic impact that gaming has in Louisiana, without providing any tax revenue or funding to support state services for its citizens.

192. While the Louisiana Legislature has recognized the economic benefits of gaming, it also recognized that gambling is not a harmless pastime. Gambling may have serious public health risks that can cause harm to a gambler's financial, economic, emotional, and physical well-being, along with the well-being of their families and communities. Therefore, Louisiana fully suppresses all gambling that is not authorized, "voted in" in a certain parish, or properly licensed or permitted—all of which Defendants ignore.

193. Studies conducted by the National Council on Problem Gambling show that "[t]he rate of gambling problems among sports bettors is at least twice as high as among gamblers in general. . . . [and] the rate of problems is even higher" when sports wagering takes place

---

[70] *Offering Illegal Sports Betting Nationwide*, American Gaming Association, perma.cc/826Z-WZBU (last visited Nov. 5, 2026).

[71] *See* Timothy Boone, *Louisiana casino revenue growing faster than national average, thanks to expansions*, The Advocate, perma.cc/2L5U-FL9C (May 15, 2026); *Gambling industry now putting more money in state's pockets than any other private enterprise*, Le Observateur, perma.cc/7KHL-ZD6L (Sept. 20, 2022).



Certified True and Correct Copy
CertID: 2026111300001

Tangipahoa Parish
Deputy Clerk Of Court

Generated Date:
11/13/2026 8:42 AM

Alteration and subsequent re-filing of this certified copy may violate La. R.S. 14:132, 133, and/or RPC Rule 3.3(a)(3).

online, "with one study of online sports gamblers indicating that 16% met clinical criteria for gambling disorder and another 13% showed some signs of gambling problems.[72]

194. Louisiana thus "has a compelling interest in protecting its citizens and children from certain activities and influences which can result in irreparable harm." La. R.S. 14:90.3(A). The State is also explicitly "charged with the responsibility of protecting and assisting its citizens who suffer from compulsive or problem gaming behavior which can result from the increased availability of legalized gaming activities." *Id.*

195. Louisiana offers free assistance to those struggling with problem gambling, including a toll-free help line and confidential, free resources to Louisiana residents.[73] Awareness, prevention, and free treatment is funded through Louisiana's legal gaming operations. *See* La. R.S. 27:27.1, 92, 241.1, 249, 270, 392, 437, 625; La. R.S. 28:84–843; La. R.S. 47:9029.

196. Louisiana and the Board strictly regulate the offerings available to persons located in Louisiana, including, but not limited to: parish-by-parish allowance per the Louisiana Constitution and local option elections; "know your customer" (or "KYC") protocols; customer due diligence (or "CDD") standards; stringent age verification (must be at least 21 years of age, *see* La. R.S. 14:90.4, 90.5); funding method limitations (*i.e.*, no credit cards, no debit cards, no automatic connection to a bank account, no cryptocurrency) and anti-money laundering (or "AML") standards; pre-commitment tools; responsible gaming requirements; customer identification standards; password standards; and more.

197. Louisiana licensees and permittees are prohibited from targeting, depicting, and marketing to minors and/or college campuses or anywhere the majority of persons are under 21. *See* La. R.S. 27:27.3; LAC 42:III.2927; LAC 42:VI.515, 517; LAC 42:VII.517, 519; LAC 42:XI.2407(D).

198. Defendants do not have the same requirements and restrictions, do not provide the same protections to Louisiana citizens, and specifically target young adults, such as men

[72] *A Review of Sports Wagering & Gambling Addiction Studies Executive Summary*, Nat'l Council On Problem Gambling, perma.cc/C75B-YS65 (last visited Oct. 30, 2026).

[73] *Problem Gambling*, Louisiana Gaming Control Board, perma.cc/QJZ3-37GM, (last visited Oct. 30, 2026).



Certified True and Correct Copy
CertID: 2026111300001

Tangipahoa Parish
Deputy Clerk Of Court

Generated Date:
11/13/2026 8:42 AM

Alteration and subsequent re-filing of this certified copy may violate La. R.S. 14:132, 133, and/or RPC Rule 3.3(a)(3).

aged 18 to 24.[74] Most, if not all, Defendants offer gambling, including sports wagering, to anyone age 18 and up, after a simple sign-up process, and provide few, if any, safeguards to educate users about financial responsibility or the risks of losing money.

199. Kalshi only recently implemented minimal responsible gambling tools, such as offering deposit limits, trading breaks, and a self-exclusion list for a specific term of time. Instead of connecting users with any State-approved resources for addressing problem gambling, Kalshi offers its users "mental health support" through a partnership with Birches Health that can be covered by the user's own health insurance.[75]

200. Polymarket likewise very recently introduced tools to help users "manage compulsive behavior" related to gambling. Those tools include deposit limits, lockouts, and access to mental health resources.[76] Polymarket also partners with Birches Health to offer treatment for users.

201. Beyond half-hearted implementation of safeguards, Defendants fail to account for the monetary harms inflicted on their users. According to a recent study, "the vast majority of people participating in prediction markets (retail traders) lose money, with the profits being captured by an extremely small number—the top 0.1 to 1 percent—of sophisticated users."[77] That, effectively, means that regular Louisianans lose money on these platforms and that only the top less-than-one percent of sophisticated users win. "Kalshi itself recently admitted that there are nearly three times as many people losing money as making it on its platform."[78] "The key point is that the deck is systematically stacked against everyday users[.]"[79]

202. Of course, the harm to people participating in prediction markets "can go beyond the monetary."[80] Certain "addictive designs" can lead bettors on platforms like Defendants'

---

[74] Benjamin Schiffrin, *Deceptive, Predatory Marketing Practices Show Why States Should Regulate Prediction Markets*, Better Markets, perma.cc/N3YE-2QZR (Oct. 21, 2026).

[75] *Support and resources for the Kalshi community*, Birches Health, perma.cc/UH2H-LNDF (last visited Oct. 30, 2026).

[76] *Polymarket introduces deposit limits, lock-outs to combat trading addiction*, Reuters, perma.cc/X6XL-34KC (Sept. 30, 2026).

[77] Brad Lipton and Toyosi Odusola, *Since Kalshi's Launch, Ordinary Users Have Lost Half a Billion Dollars*, Roosevelt Institute, perma.cc/XBG9-W73H (July 7, 2026).

[78] *Id.*

[79] *Id.*

[80] *Id.*



Certified True and Correct Copy
CertID: 2026111300001

Tangipahoa Parish
Deputy Clerk Of Court

Generated Date:
11/13/2026 8:42 AM

Alteration and subsequent re-filing of this certified copy may violate La. R.S. 14:132, 133, and/or RPC Rule 3.3(a)(3).

"to develop addictive behaviors"—"betting more and more to earn back losses, leading to a spiral of financial harm, instability, and potential bankruptcy."[81] "Research also links sports betting, and particularly losses when betting on sports, to a rise in intimate partner violence, financial precarity, and adverse mental health outcomes."[82]

203. Defendants market extensively to Louisianians through their websites, mobile apps, advertisements on streaming videos and television (especially during or surrounding sports broadcasts), and through social media platforms. Certain Defendants are now contracting with media companies for advertising, segments, and to display their "odds" on the news. For example, in the recent elections, "CBS News announced Kalshi as an official 'prediction market' sponsor ... and featured its gambling odds alongside the network's usual battleground tracking."[83]

204. Defendants use a range of marketing techniques to "lure younger users onto their platforms—including paid social media influencers, targeted and FOMO messaging, and celebrity endorsements."[84] A Wall Street Journal investigation revealed platforms like Defendants have "flooded social media with deceptive videos by paid creators."[85]

205. Polymarket's own chief marketing officer "used a personal PayPayl account to send at least $350,000 to ... content creators [and] to send over $2.5 million to more than 800 people during the same timeframe." [86]

206. Defendants' advertisements, beyond contributing to the addictive nature of online sports betting, convey the false and misleading impression that they are authorized to offer sports wagering in Louisiana:

---

[81] *Id.*
[82] *Id.*
[83] Becket Adams, *Newsrooms Made a Dumb Bet on Gambling Partnerships*, National Review, perma.cc/8D94-EHLM (Nov. 8, 2026).
[84] *Id.*
[85] Katherine Long, et al., They Looked Like They Were Getting Rich on Polymarket—but None of It Was Real, The Wall Street Journal, https://www.wsj.com/business/media/polymarket-social-media-bets-prediction-market-441cdeb5 (June 20, 2026).
[86] Jason Beeferman, et al., *'Unbelievable how accurate': How paid influencers hype Polymarket's odds*, Politico, https://www.politico.com/news/2026/06/05/polymarket-paid-political-influencers-00932789 (June 5, 2026).



Certified True and Correct Copy
CertID: 2026111300001

Tangipahoa Parish
Deputy Clerk Of Court

Generated Date:
11/13/2026 8:42 AM

Alteration and subsequent re-filing of this certified copy may violate La. R.S. 14:132, 133, and/or RPC Rule 3.3(a)(3).

****COMPLEX LITIGATION****










207. Each of the foregoing violations of Louisiana law causes direct harm to the State, its economy, and the well-being of its citizens.

**IV. CAUSES OF ACTION**

**FIRST CAUSE OF ACTION**
**Application for Temporary Restraining Order and Preliminary Injunction**

208. Plaintiff incorporates each of the foregoing paragraphs herein as if set forth in their entirety.

209. A party seeking a preliminary injunction must make a prima facie showing that "they will prevail on the merits and that irreparable injury or loss will result without the preliminary injunction." *City of Baker Sch. Bd. v. Bd. of Elementary & Secondary Educ., Recovery Sch. Dist.*, 2025-0699 (La. App. 1 Cir. 9/19/25), 421 So. 3d 1084, 1098.



Certified True and Correct Copy
CertID: 2026111300001
Tangipahoa Parish
Deputy Clerk Of Court
Generated Date:
11/13/2026 8:42 AM
Alteration and subsequent re-filing of this certified copy may violate La. R.S. 14:132, 133, and/or RPC Rule 3.3(a)(3).

210. Louisiana Code of Civil Procedure art. 3601 provides that "[a]n injunction shall be issued in cases where irreparable injury, loss, or damage may otherwise result to the applicant, or in other cases specifically provided by law[.]"

211. The Attorney General may "bring an action in the name of the state to restrain by temporary or permanent injunction the conduct giving rise to" a violation of the State's computer gambling laws. La. R.S. 27:19.1(G).

212. "In addition to any other remedy under law, upon application by the attorney general, regardless of whether proceedings have been initiated …, a court may issue any relief it deems appropriate to prevent and restrain activities prohibited" by Louisiana law. La. R.S. 27:19.2(A). "Such relief may include a temporary restraining order, preliminary injunction, or injunction against any person in violation of R.S. 14:90.3 to prevent or restrain gambling by computer and any related transactions[.]" *Id.* And any "violation of this Chapter shall conclusively be determined [to be] irreparable harm" *Id.*

213. For the reasons set forth above and in the following causes of action, the State of Louisiana has demonstrated a likelihood of proving that Defendants have each violated Louisiana law—namely, La. R.S. 14:90, 14:90.3, 27:604, and related gaming provisions—and has likewise inflicted irreparable harm to both the State and its citizens.

**SECOND CAUSE OF ACTION**
**Violation of the Louisiana Unfair Trade Practices Act**
**(Unfair and Deceptive Acts and Practices, La. R.S. 51:1405, Including Conduct in Violation of La. R.S. §§ 14:90, 14:90.3, 27:604)**

214. Plaintiff incorporates each of the foregoing paragraphs herein as if set forth in their entirety.

215. The Louisiana Unfair Trade Practices Act ("LUTPA") sets forth Louisiana's statutory program prohibiting deceptive and unfair trade practices. La. R.S. 51:1401, *et seq*. (The full title of this Chapter of the Louisiana Code is the "Unfair Trade Practices and Consumer Protection Law." *See id.*). LUTPA protects "consumers," La. R.S. 51:1402(1), and the public by declaring that "unfair or deceptive acts or practices in the conduct of any trade or commerce are ... unlawful," La. R.S. 51:1405(A). The Louisiana Attorney General has the power to, among other things, "investigate" and "institute legal proceedings and



Certified True and Correct Copy
CertID: 2026111300001

Tangipahoa Parish
Deputy Clerk Of Court

Generated Date:
11/13/2026 8:42 AM

Alteration and subsequent re-filing of this certified copy may violate La. R.S. 14:132, 133, and/or RPC Rule 3.3(a)(3).

take such other actions" to address unfair trade practices under LUTPA. La. R.S. 51:1404(A)(1)(a), (B).

216. Defendants' business conduct, described above, constitutes "trade" or "commerce" under LUTPA. La. R.S. 51:1402(10). LUTPA defines "trade" or "commerce" as "the advertising, offering for sale, sale, or distribution of any services and any property, corporeal or incorporeal, immovable or movable, and any other article, commodity, or thing of value wherever situated, and includes any trade or commerce directly or indirectly affecting the people of the state." *Id.*

217. La. R.S. 14:90 prohibits "gambling" including the "the intentional conducting, or directly assisting in the conducting as a business of any game, contest, lottery, or contrivance whereby a person risks the loss of anything of value in order to realize a profit."

218. La. R.S. 14:90.3(B) prohibits "gambling by computer," which is gambling utilizing the Internet, computer, and related technology.

219. La. R.S. 27:604(A)(1) prohibits any "person, business, or legal entity" from "operat[ing] a sports book without first being licensed by the board." La. R.S. 27:29(A) further states that "[t]he securing of a permit under the provisions of this Title shall be a prerequisite for performing any activity which requires a permit pursuant to this Title" and is applicable to entities who provide services to sportsbooks and gaming operators.

220. A trade practice is "unfair" under LUTPA when it "offends established public policy and is immoral, unethical, oppressive, unscrupulous, or substantially injurious," and it is "deceptive" when it involves fraud, misrepresentation, deception, or the concealment or omission of material facts. *See River Rental Tools, Inc. v. Smith Power Sols., LLC*, 2021-0716 (La. App. 4 Cir. 6/15/22), 342 So. 3d 1052, 1057, *writ denied*, 2022-01076 (La. 10/18/22), 348 So. 3d 728.

221. As detailed above, each Defendant engages in both gambling by computer and sports wagering without appropriate licensure. That conduct plainly violates Louisiana law. And it violates the established public policy of Louisiana as expressed through its duly enacted statutes.



Certified True and Correct Copy
CertID: 2026111300001

Tangipahoa Parish
Deputy Clerk Of Court

Generated Date:
11/13/2026 8:42 AM

Alteration and subsequent re-filing of this certified copy may violate La. R.S. 14:132, 133, and/or RPC Rule 3.3(a)(3).

222. Defendants' unauthorized offering and facilitation of sports wagering in Louisiana, in deliberate disregard of the State's licensing, permitting, age, and consumer-protection laws, is an unfair practice: It is unconscionable, offends the established public policy of Louisiana, and causes substantial consumer injury that is not outweighed by any countervailing benefit to consumers or competition.

223. Defendants have also engaged in deceptive acts and practices. Through the promotion of wagering on their websites, mobile applications, and other advertising, Defendants have repeatedly conveyed the false, deceptive, and misleading impression that the wagers they offer are lawful in Louisiana and are mere "event contracts" or federally regulated financial instruments, rather than the illegal sports bets that they are under Louisiana law.

224. Defendants further misrepresent that their platforms are safe, legitimate, and trustworthy, while concealing that they operate without the licensing, suitability vetting, minimum gambling age of 21, self-exclusion and responsible-gaming tools, funding-method and anti-money-laundering controls, and sports-integrity safeguards that Louisiana law requires of lawful operators.

225. Defendants deceptively omit and conceal material facts on which Louisiana consumers would rely, including the illegality of Defendants' offerings under Louisiana law and the material risks of those offerings—among them insider trading, information asymmetry, and the dominance of sophisticated and professional traders and market-making entities that function as the "house"—with the intent that consumers rely on those omissions and thereafter pay Defendants' transaction fees and commissions.

226. Defendants compound these misrepresentations through deceptive marketing that targets younger users, including paid social-media influencers, "fear of missing out" messaging, and celebrity endorsements, and has flooded social media with deceptive videos reinforcing the false impression that Defendants' offerings are lawful in Louisiana.

227. Defendants' unfair and deceptive conduct is knowing and willful. Defendants recognize the legal impediment to operating in Louisiana yet persist, using the "event contract" label to avoid admitting that they are offering illegal sports wagering.



Certified True and Correct Copy
CertID: 2026111300001

Tangipahoa Parish
Deputy Clerk Of Court

Generated Date:
11/13/2026 8:42 AM

Alteration and subsequent re-filing of this certified copy may violate La. R.S. 14:132, 133, and/or RPC Rule 3.3(a)(3).

228. Defendants' conduct has caused substantial injury to the public interest and public marketplace, including the erosion of the integrity of regulated markets within Louisiana, as well as the health, safety, and well-being of Louisiana consumers who gamble on Defendants' platforms.

229. Plaintiff maintains that Defendants' business practices described above regarding the inadequate safety and identification controls and failure to provide notice of the risks of gambling were and are deceptive, unfair, unscrupulous, oppressive, contrary to established public policy, and substantially injurious to the public, including young adults, and their parents in violation of La. R.S. 51:1401 *et seq*, including but not limited to those who placed bets on Defendants' apps and sites.

230. Without appropriate injunctive relief, Defendants' unfair and deceptive trade practices will continue and cause ongoing harm to the State and its citizens.

231. Accordingly, Louisiana seeks an injunction enjoining the Defendants' deceptive and unfair conduct, appropriate civil penalties per violation, damages, restitution, disgorgement of Defendants' ill-gotten gains, costs, attorneys' fees, and all other relief available under LUTPA.

**THIRD CAUSE OF ACTION**
**False Advertising**
**(Violation of La. R.S. 51:411)**

232. Plaintiff incorporates each of the foregoing paragraphs herein as if set forth in their entirety.

233. Louisiana law makes it unlawful for any person "with intent to sell or in any way dispose of merchandise, securities, service, or anything directly or indirectly, to the public," or "to induce the public in any manner to enter into any obligation relating thereto," to "ma[ke], publish[], disseminate[], circulate[], or place[] before the public ... an advertisement of any sort" that "contains any assertion, representation, or statement of fact which is untrue, deceptive, or misleading." La. R.S. 51:411(A).

234. Defendants act with the intent to sell or dispose of their services to the public, and to induce the public to enter into obligations relating thereto, when they advertise, market, and promote their platforms and offerings to Louisiana consumers—on their websites,



Certified True and Correct Copy
CertID: 2026111300001

Tangipahoa Parish
Deputy Clerk Of Court

Generated Date:
11/13/2026 8:42 AM

Alteration and subsequent re-filing of this certified copy may violate La. R.S. 14:132, 133, and/or RPC Rule 3.3(a)(3).

mobile applications, app-store listings, and through television, streaming, and social-media advertising.

235. Defendants repeated and continuing violations of LUPTA include, but are not limited to:

a. Developing and marketing platforms that lack safeguards and warnings to protect Louisiana consumers from the harms related to gambling;

b. Falsely and deceptively marketing and advertising their platforms by misrepresenting as legal sports wagering or legal in every State, or, in the alternative, as financial tools or investments;

c. Directing conduct at young adults, without protections for advertising, including using paid influencers who are or appear to be teenagers, using social media platforms that target teenagers and young adults, and allowing 18-year-olds (which could be high school students) to wager on their platforms through the misconceived notion that they are purchasing trades on a market; and

d. Omitting, concealing and suppressing material facts in the advertising and marketing of their products as related to the risks of gaming.

236. When Defendants advertise and represent that their sports-wagering offerings are lawful "event contracts" available to Louisiana residents—including Kalshi's holding itself out as offering "sports betting" in all 50 states—they place before the Louisiana public advertisements containing assertions, representations, or statements of fact that are untrue, deceptive, or misleading, because those offerings are illegal sports wagers under Louisiana law.

237. These advertisements are material, they are likely to mislead a reasonable consumer, and they bear directly on whether Louisianans believe they may lawfully and safely wager on Defendants' platforms.

238. Louisiana is entitled to a fine of not less than five hundred dollars nor more than twenty-five hundred dollars for each violation of Louisiana's false-advertising law. La. R.S. 51:411(E).



Certified True and Correct Copy
CertID: 2026111300001

Tangipahoa Parish
Deputy Clerk Of Court

Generated Date:
11/13/2026 8:42 AM

Alteration and subsequent re-filing of this certified copy may violate La. R.S. 14:132, 133, and/or RPC Rule 3.3(a)(3).

239. Accordingly, Louisiana seeks an injunction enjoining the Defendants' deceptive and unfair conduct, appropriate civil penalties per violation, damages, restitution, disgorgement of Defendants' ill-gotten gains, costs, attorneys' fees, and all other relief available under LUTPA.

**FOURTH CAUSE OF ACTION**
**Unjust Enrichment**
**(La. Civ. Code art. 2298)**

240. Plaintiff incorporates each of the foregoing paragraphs herein as if set forth in their entirety.

241. In the alternative, and to the extent the State is found to have no other remedy at law against Defendants, the State maintains this action under the principles of unjust enrichment, pursuant to Louisiana Civil Code article 2298.

242. To prevail on a claim of unjust enrichment, the plaintiff must establish five elements: "(1) an enrichment; (2) an impoverishment; (3) a connection between the enrichment and the resulting impoverishment; (4) an absence of justification or cause for the enrichment and impoverishment; and (5) the lack of another remedy at law." *Berthelot v. Berthelot*, 2017-1332 (La. App. 1 Cir. 7/18/18), 254 So. 3d 735, 738.

243. **Enrichment**. Defendants have received and retained transaction fees, commissions, and other revenues generated from Louisiana users' wagers on Defendants' platforms—for example, Kalshi alone earned $263.5 million in fee revenue in 2025, with $234.6 million of that revenue generated from sports wagering.

244. **Impoverishment**. Louisiana consumers have been impoverished through the fees and wagering losses they paid to Defendants, and the State has been impoverished through the loss of the gaming taxes, license fees, and permit fees it would have collected from lawful operators, including the 21.5% tax on net gaming proceeds from sports wagering.

245. **Connection**. There is a direct connection between Defendants' enrichment and this impoverishment: The fees, commissions, and revenues Defendants retained came directly at the expense of Louisiana consumers and the Louisiana treasury, through illegal sports wagering.



Certified True and Correct Copy
CertID: 2026111300001

Tangipahoa Parish
Deputy Clerk Of Court

Generated Date:
11/13/2026 8:42 AM

Alteration and subsequent re-filing of this certified copy may violate La. R.S. 14:132, 133, and/or RPC Rule 3.3(a)(3).

246. **Absence of justification or cause**. There is no juridical act, contract, or law that justifies Defendants' enrichment. Defendants are unlicensed and unpermitted in Louisiana and obtained these benefits through unlawful, unfair, and deceptive conduct that they could not lawfully engage in.

247. **No other remedy**. This claim is pleaded in the alternative, as a subsidiary remedy, to the extent the State is found to have no other remedy at law for the impoverishment described herein.

248. Equity and good conscience cannot permit Defendants to retain the benefits they derived from Louisiana consumers and the State through their unjust and unlawful acts. Restitution and disgorgement of the amount of Defendants' unjust enrichment are therefore required.

**PRAYER FOR RELIEF**

249. Plaintiff prays that the Court issue a temporary restraining order, a preliminary injunctive order, and, in due course, a permanent injunctive order against Defendants, including any employees, agents, contractors, and those persons cooperating or participating with them, to restrain, enjoin, and prohibit Defendants from:

a. Operating in and/or offering products and/or services to persons located in Louisiana or, in the alternative, offering "event contracts" or other products on events including sports events, awards events, political events, and elections to persons located in Louisiana, with both options requiring the Defendants to geofence out of Louisiana using a Board permitted sports wagering service provider approved to provide geolocation services in Louisiana;

b. Engaging in any activity in violation of Louisiana gaming law;

c. Engaging in false advertising in violation of La. R.S. 51:411;

d. Engaging in any other activity in violation of LUTPA; and

e. Any other provisions the Court finds to be equitable.

250. Plaintiff further prays for relief as follows:



Certified True and Correct Copy
CertID: 2026111300001

Tangipahoa Parish
Deputy Clerk Of Court

Generated Date:
11/13/2026 8:42 AM

Alteration and subsequent re-filing of this certified copy may violate La. R.S. 14:132, 133, and/or RPC Rule 3.3(a)(3).

a. The Court order Defendants to reimburse the Office of the Attorney General for all costs and expenses incurred in the investigation and prosecution of this action, including attorney's fees under La. R.S. 51:1408 and related statutes;

b. The Court order all additional civil penalties and damages allowable under law, including but not limited to forfeiture under La. R.S. 14:90.3(J);

c. The Court order civil fines of not less than five hundred dollars nor more than twenty-five hundred dollars for each violation of Louisiana's false-advertising law under La. R.S. 51:411(E);

d. The Court order restitution and disgorgement of the revenues, fees, and commissions by which Defendants have been unjustly enriched; and

e. The Court grant any further relief that it finds justice may require or is otherwise equitable.



Certified True and Correct Copy
CertID: 2026111300001

Tangipahoa Parish
Deputy Clerk Of Court

Generated Date:
11/13/2026 8:42 AM

Alteration and subsequent re-filing of this certified copy may violate La. R.S. 14:132, 133, and/or RPC Rule 3.3(a)(3).

****COMPLEX LITIGATION****

Dated: November 12, 2026

Respectfully submitted,

ATTORNEY GENERAL LIZ MURRILL

/s/ *Michael Dupree*

DAWN M. HIMEL (La #31007)
*Director, Gaming Division*
himeld@ag.louisiana.gov

JEREMY GATHE (La #34557)
*Section Chief, Gaming Division*
gathej@ag.louisiana.gov

SARAH TROUARD (La #30313)
*Assistant Attorney General, Gaming Division*
trouards@ag.louisiana.gov

MICHAEL DUPREE (La #26870)
*Director, Public Protection Division*
dupreem@ag.louisiana.gov

JOHN J. KELLEY (La #35506)
*Section Chief, Public Protection Division*
kelleyj@ag.louisiana.gov

RYAN M. NOLAN (La #37244)
*Assistant Attorney Geneal, Complex Litigation, Public Protection Division*
nolanry@ag.louisiana.gov

OFFICE OF THE LOUISIANA ATTORNEY GENERAL
1885 North Third Street
Baton Rouge, LA 70804
Telephone: (225) 326-6766
Facsimile: (225) 326-6795

*Counsel for Plaintiff State of Louisiana*



Certified True and Correct Copy
CertID: 2026111300001

Tangipahoa Parish
Deputy Clerk Of Court

Generated Date:
11/13/2026 8:42 AM

Alteration and subsequent re-filing of this certified copy may violate La. R.S. 14:132, 133, and/or RPC Rule 3.3(a)(3).

****COMPLEX LIGITATION****

Tangipahoa Parish Clerk of Court 20260004268
Filed Nov 12, 2026 10:43 AM XX
Marquita Dyson CLS
Deputy Clerk of Court
E-File Received Nov 12, 2026 9:43 AM

**21ST JUDICIAL DISTRICT COURT, PARISH OF TANGIPAHOA**

**STATE OF LOUISIANA**

**NO. ______________ DIVISION ______ SECTION ______**

**STATE OF LOUISIANA, by and through its ATTORNEY GENERAL, LIZ MURRILL**

**VERSUS**

**KALSHI INC.; KALSHI KLEAR INC.; KALSHI KLEAR LLC; KALSHIEX LLC; KALSHI TRADING LLC; QCX LLC d/b/a POLYMARKET US; BLOCKRATIZE INC.; QC TECH LLC; QC CLEARING LLC; PM DERIVATIVES LLC; ROBINHOOD MARKETS, INC.; ROBINHOOD DERIVATIVES, LLC; FORECASTEX LLC; ROTHERA EXCHANGE AND CLEARING LLC; FORIS HOLDINGS US, INC.; FORIS DAX, INC. d/b/a CRYPTO.COM; NORTH AMERICAN DERIVATIVES EXCHANGE, INC. d/b/a CRYPTO.COM | DERIVATIVES NORTH AMERICA; OG.COM; FORIS DAX FCM, LLC d/b/a OG BROKER; COINBASE GLOBAL, INC.; COINBASE FINANCIAL MARKETS, INC.; LUDLOW EXCHANGE, LLC d/b/a NOVIG; UNDERDOG SPORTS HOLDINGS, INC.; UNDERDOG EXCHANGE DCM, INC.; UDM, LLC d/b/a UNDERDOG PREDICT; IG GROUP HOLDINGS PLC; GEMINI SPACE STATION, INC.; GEMINI TITAN, LLC; GEMINI OLYMPUS, LLC; GEMINI TRUST COMPANY, LLC; and PROPHETX OPCO LLC d/b/a PROPHETX**

---

## VERIFICATION

**STATE OF LOUISIANA**

**PARISH OF EAST BATON ROUGE**

**BEFORE ME**, the undersigned Notary Public, duly commissioned and qualified in and for the above parish and state, personally came and appeared:

**Michael Dupree,**

who, after being duly sworn, did depose and state:

1. I am the Director of the Public Protection Division of the Office of the Louisiana Attorney General. I am authorized to make this verification on behalf of the Plaintiff, the State of Louisiana, and I am over the age of majority and competent to make it.

2. I make this verification based on my personal knowledge and on records maintained in the ordinary course of the State's investigation of this matter, which I have reviewed in my official capacity.

3. I have read the foregoing Petition for Temporary Restraining Order, Preliminary Injunction, Civil Penalties, and Other Relief. The factual allegations contained in the Petition are true and correct to the best of my knowledge, information, and belief.

4. The Defendants' online platforms remain accessible to, and continue to accept or facilitate wagers from, persons located in Louisiana as of the date of this verification, including persons under twenty-one years of age. Each day the Defendants continue to operate in Louisiana, additional Louisiana residents are able to place unlawful wagers, and the resulting harm to the

Certified True and Correct Copy
CertID: 2026111300002

Tangipahoa Parish
Deputy Clerk Of Court

Generated Date:
11/13/2026 8:43 AM

Alteration and subsequent re-filing of this certified copy may violate La. R.S. 14:132, 133, and/or RPC Rule 3.3(a)(3).

****COMPLEX LIGITATION****

State and its residents increases. That harm cannot be undone after the fact. For these reasons, immediate and irreparable injury, loss, or damage will result to the State before the Defendants can be heard in opposition.

Michael Dupree, Director
AG's Public Protection Division
Printed Name: MICHAEL DUPREE
Title: DIRECTOR

**SWORN TO AND SUBSCRIBED** before me this 12 day of November, 2026.

NOTARY PUBLIC
Printed Name: John Kelley
Notary/Bar No.: 35506
My commission expires: Death

Certified True and Correct Copy
CertID: 2026111300002

Tangipahoa Parish
Deputy Clerk Of Court

Generated Date:
11/13/2026 8:43 AM

Alteration and subsequent re-filing of this certified copy may violate La. R.S. 14:132, 133, and/or RPC Rule 3.3(a)(3).